Jaime RASMUSSEN, et al.,
Respondents/Cross–
Appellants,

v.

TWO HARBORS FISH COMPANY
d/b/a Lou's Fish House, et al.,
Appellants.

No. A11–2178.

Supreme Court of Minnesota.

May 22, 2013.

Thomas F. Andrew, Jane C. Poole, Aaron R. Bransky, Andrew & Bransky, P.A., Duluth, MN, for respondents/cross-appellants.

Joseph J. Roby, Jr., Johnson, Killen & Seiler, P.A., Duluth, MN, for appellants.

Dorene R. Sarnoski, Dorene R. Sarnoski Law Office, Stephen L. Smith, Law Firm of Stephen L. Smith, David Schlesinger, Steven A. Smith, Nichols Kaster, LLP, Justin D. Cummins, Cummins & Cummins, LLP, Minneapolis, MN; and Leslie L. Lienemann, Culberth & Lienemann, LLP, Saint Paul, MN, for amicus curiae Minnesota Chapter National Employment Lawyers Association.

## OPINION

GILDEA, Chief Justice.

At issue in this case is whether the respondents/cross-appellants Jaime Rasmussen, Jennifer Moyer, and Kathe Reinhold are entitled to relief under the Minnesota Human Rights Act (MHRA), Minn. Stat. §§ 363A.01–.43 (2012). Rasmussen, Moyer, and Reinhold (the Employees) filed a complaint alleging that their employers, Two Harbors Fish Company and BWZ Enterprises (the Employers), violated the MHRA based on sexual harassment perpetrated by Brian Zapolski, who is the sole

owner of both entities.[1] The Employees also alleged that Zapolski was individually liable under the MHRA's aiding and abetting provision.

The district court dismissed the Employees' claims with prejudice, finding that they had not been subject to harassment that is actionable under the MHRA. The Employees appealed, and the court of appeals reversed. *Rasmussen v. Two Harbors Fish Co.*, 817 N.W.2d 189, 191 (Minn. App.2012). The court of appeals held that the district court's determination that the harassment was not actionable was clearly erroneous, and the court of appeals ruled as matter of law that the Employees were entitled to judgment on their claims. *Id.* at 202. But the court held that Zapolski could not be individually liable for aiding and abetting the Employers' MHRA violations. *Id.* at 203.

The Employers and Zapolski appeal the court of appeals' decision on the merits of the Employees' sexual harassment claims. On cross-appeal, the Employees challenge the ruling on Zapolski's liability as an aider and abettor. We agree with the court of appeals that Zapolski cannot be liable on an aiding and abetting theory. But because we conclude that the district court made errors of law in its decision on the merits of the Employees' MHRA claims, we reverse and remand.

The Lake County District Court held a bench trial on the Employees' claims. At trial, the Employees testified about Zapolski's behavior. The district court made findings specific to each of the Employees.

With respect to Rasmussen, the district court found that her "testimony was substantially credible." Rasmussen testified that approximately 6 months after she began working for the Employers, Zapolski began asking her questions about her sexual preferences. When Zapolski asked her these questions, Rasmussen told him that it was "none of [his] business." Zapolski also told Rasmussen about his sexual preferences and sexual dreams. Zapolski called Rasmussen several pet names and used very explicit sexual language in the workplace. Rasmussen testified that she told Zapolski that she did not want to hear those things. Zapolski also told Rasmussen stories of a sexual nature regarding other employees, made sexual comments about female customers, and made a joke about his penis size. Rasmussen testified that she was "totally humiliated" by the comments Zapolski made toward female customers.

In addition to making comments of a sexual nature, Rasmussen testified that Zapolski engaged in other inappropriate conduct, including touching Rasmussen on the posterior on at least two occasions. Zapolski showed Rasmussen and other employees a picture in a Playboy magazine and told Rasmussen that the woman in the picture looked like her. Zapolski also gave Rasmussen a pornographic DVD and asked her to watch it.

Rasmussen testified that she was "grossed out by the way [Zapolski] looked at" her and talked about her. She said that she continued to work for the Employers for as long as she did because her husband was laid off, and she was the sole

---

1. Appellant Two Harbors Fish Company d/b/a Lou's Fish House is a Minnesota corporation located in Two Harbors, Minnesota. Appellant BWZ Enterprises is a Minnesota limited liability company doing business in Two Harbors. Appellant Brian Zapolski is the sole owner of both entities. Lou's Fish House consists of a retail location and an area for smoking meat. BWZ Enterprises owns a motel that is in the same location as Lou's Fish House. The Employees were employees of Two Harbors Fish Company and BWZ Enterprises.

provider for her family. Despite the problems she was experiencing with Zapolski, however, Rasmussen recommended that Moyer begin working for the Employers in May 2009.

Rasmussen terminated her employment with the Employers in March 2010. The district court found that "Zapolski's conduct may have been a partial factor in Rasmussen's decision to leave her employment."

Regarding Moyer, the district court found that "Moyer's testimony was moderately credible." Moyer began working for the Employers in May 2009, and she worked between 10 and 20 hours per week. Moyer testified that about 2 or 3 weeks after she started working for the Employers, Zapolski began to ask Moyer about her sex life and told her about his sex life. He also occasionally made comments of a sexual nature to her about other people. In addition, Zapolski would sometimes call Moyer at work during an evening shift and ask, "[h]ow's my little horny one?" Moyer said that she did not want to answer the phone at work because she was "scared that it was gonna be [Zapolski] on the other line." Also, on one occasion, Zapolski referred to Moyer as his girlfriend in front of a male employee. Moyer told Zapolski that she was not his girlfriend and "he got mad and walked out."

Moyer testified that Zapolski asked her if she had any single friends that she "could hook him up with." Zapolski told Moyer that he would be "willing to pay for it." Moyer was also touched by Zapolski at least once when Zapolski grabbed her waist. Zapolski showed Moyer the same picture in the Playboy magazine that Rasmussen described and asked Moyer if the picture reminded her of Rasmussen. Moyer testified that the experience made her feel "[e]xtremely violated ... [a]nd uncomfortable."

Moyer quit working for the Employers at the end of August 2009. On the day Moyer quit, Zapolski criticized her for using her cell phone at work. Moyer told him that she only used her phone to check on her daughter during the day. The district court found that "Moyer's decision to terminate her employment was precipitated, at least in part, by Zapolski['s] discipline regarding Moyer's use of her cell phone at work."

Regarding Reinhold, the district court found that her "testimony was substantially credible." Reinhold began working for the Employers in November 2009, but she soon quit. Reinhold testified that Zapolski began making sexual comments to Reinhold on her first day of work and did so every day thereafter, including describing the sex life of others and discussing the size of men's genitals. Zapolski told Reinhold that he was going to call her "Sweets." Reinhold told Zapolski that she would not like that and that he should not call her that. Zapolski also touched Reinhold, including leading her around by the hand, and picking wood chips from the chest area of her sweater after she had been splitting and stacking wood. Zapolski's physical touching embarrassed Reinhold. Also, during her brief employment, Reinhold ran into Zapolski outside of work. She mentioned that there was a football game on the day she ran into Zapolski, and Zapolski said, "Well, it's a perfect day to watch football and make love." Reinhold felt that Zapolski's comment "was an invitation" and it made her feel anxious.

Reinhold's last day of employment was November 16, 2009. The district court found that "Zapolski's sexually inappropriate conduct may have been a partial factor in Reinhold's decision to leave her employment."

Zapolski testified at trial and denied that any of the offensive behavior the Employees described had occurred. The district court did "not believe Zapolski's testimony was truthful and therefore [the court] generally disregarded his denials."

After trial, the district court issued written findings of fact and conclusions of law and dismissed the Employees' claims. The court made findings of fact regarding the conduct perpetrated by Zapolski against each Employee and stated that "even if [the conduct complained of was] totally true," the Employees had not established sexual harassment that rose to a sufficiently severe or pervasive level so as to be actionable under the MHRA. The court found that the Employees were "subjected to coarse sexual talk, gestures, and conduct they did not welcome" and "that the majority of the sexual comments [were] based on sex." But the court found that the Employees' employment was not conditioned on their submission to or participation in any sexual acts and that they did not suffer adversely in their employment because they did not lose salary or work hours for failing to participate. Ultimately, the court found that the Employees had not met "the high threshold of actionable harm by showing that the workplace is permeated with discriminatory intimidation, ridicule and insult." In reaching this conclusion, the court noted that none of the Employees "sought counseling" or "were explicitly sexually propositioned." Moreover, the court noted that Zapolski's sexual comments "were widespread throughout the employment setting and not merely directed at females."

The Employees moved the district court to amend and supplement its findings of fact and conclusions of law, and included in their motion a request that the court make findings of fact regarding specific instances of misconduct that had been alleged by the Employees. The court issued Amended Findings of Fact, Conclusions of Law, and Order for Judgment and Decree, but declined to "address each and every alleged act or statement plaintiffs offered in support of their claims," noting that "[e]nough detail was provided to explain to the parties the basis for the Court's original opinion."

The Employees appealed. The court of appeals reversed, concluding that the district court erred in its determination that Zapolski's conduct "was not sufficiently severe and pervasive to create a hostile, intimidating, or offensive work environment" under the MHRA. *Rasmussen*, 817 N.W.2d at 191. The court of appeals recited the facts as found by the district court regarding the conduct directed at each Employee, but also noted that the district court had "sanitized" or "omitted" more explicit or egregious aspects of the Employees' testimony. *Id.* at 192–95. But because the district court found that the Employees were "moderately credible" or "credible," found Zapolski "not credible," and reasoned that "even if totally true" the allegations of the Employees did not constitute sexual harassment under the MHRA, the court of appeals determined that it could consider incidents of alleged misconduct about which the district court did not make explicit findings. *Id.* The court of appeals also considered the applicable standard of review and stated that it "believe[d] that the ultimate determination of sexual harassment is a legal conclusion rather than a finding of fact." *Id.* at 197. The court of appeals, however, "did not make a definitive determination on the standard of review," because even under a clearly erroneous standard, the court of appeals concluded that the district court had erred. *Id.* Based on its consideration of additional facts not found by the district court, the court of appeals ruled in favor of the Employees and directed the district

court on remand to enter judgment in favor of each of the Employees and address the question of their damages. *Id.* at 203. The court of appeals also held that while Zapolski might be personally liable as an "alter ego of the corporation," he was not liable under the MHRA as an aider and abettor of the Employers. *Id.*

The Employers and Zapolski petitioned our court for further review, arguing that the court of appeals had, effectively and inappropriately, performed a de novo review of the district court's decision. The Employees responded to the petition for review and requested that in the event we granted the petition, we also review the court of appeals' holding that Zapolski could not be held individually liable under the MHRA's aiding-and-abetting provision. We granted the petition for further review and granted the request for conditional cross-review.

### I.

The MHRA is a remedial act that should be "construed liberally," Minn.Stat. § 363A.04, in order to accomplish its purpose of "secur[ing] for persons in this state, freedom from discrimination," Minn. Stat. § 363A.02, subd. 1(a). In *Continental Can Co. v. State,* we held that sex discrimination as prohibited under the MHRA includes "sexual harassment which impacts ... the conditions of employment." 297 N.W.2d 241, 249 (Minn.1980).

We reasoned that differential treatment based on sex is apparent when promotion or continued employment "is conditioned on dispensation of sexual favors." *Id.* at 248. And we said that sexual discrimination is "invidious, although less recognizable, when employment is conditioned either explicitly or impliedly on adapting to a workplace in which repeated unwelcome sexually derogatory remarks and sexually motivated physical contact are directed at an employee because she is a female."[2] *Id.*

After our decision in *Continental Can,* the Legislature amended the MHRA to expressly state that sexual harassment is a form of sex discrimination and added a definition of "sexual harassment." Act of Mar. 23, 1982, ch. 619, §§ 2–3, 1982 Minn. Laws 1508, 1511 (codified as amended at Minn.Stat. § 363A.03, subds. 13, 43). The MHRA makes it illegal for "an employer, because of ... sex ... [to] discriminate against a person with respect to hiring, tenure, compensation, terms, upgrading, conditions, facilities, or privileges of employment." Minn.Stat. § 363A.08, subd. 2(3). And "[t]he term 'discriminate' includes segregate or separate and, for purposes of discrimination based on sex, it includes sexual harassment." Minn.Stat. § 363A.03, subd. 13. The MHRA defines "sexual harassment" in relevant part, as "unwelcome sexual advances, requests for sexual favors, sexually motivated physical

---

**2.** The dissents contend that we are retreating from *Continental Can* today in remanding this case. We disagree. *Continental Can* was decided under an early version of the MHRA that provided for trial before and fact-finding by a hearing officer within the Department of Human Rights. 297 N.W.2d at 243–45; *see also* Minn.Stat. § 363.071 (1978). Appeals from those hearings were taken to the district court. Minn.Stat. § 363.072 (1978). In *Continental Can,* the hearing officer, acting as the fact-finder, determined that the employer violated the MHRA. 297 N.W.2d at 243. On appeal to the district court, the court "made supplemental findings of fact instead of confining itself to a review of the hearing examiner's decision." *Id.* at 250. We reversed the district court's decision and reinstated the fact-finder's conclusions. *Id.* at 251. The result in *Continental Can* reinforces the conclusion that the proper scope of appellate review does not encompass appellate fact-finding. This conclusion is consistent with the result we reach here to remand this case to the fact-finder for application of the correct legal standard.

contact or other verbal or physical conduct or communication of a sexual nature when . . . that conduct or communication has the purpose or effect of substantially interfering with an individual's employment . . . or creating an intimidating, hostile, or offensive employment . . . environment." *Id.,* subd. 43(3) (internal quotation marks omitted).

Subsequent to these developments in Minnesota law, the United States Supreme Court recognized sexual harassment as a type of sex discrimination prohibited under Title VII. *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 66–68, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). In *Meritor Savings Bank,* the Court held that "a plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment," *id.* at 66, 106 S.Ct. 2399, and that the plaintiff need not show that the harassment has economic consequences, thereby distinguishing between quid pro quo sexual harassment and hostile work environment sexual harassment, *id.* at 64–66, 106 S.Ct. 2399. The Court held, however, that for such hostile work environment sexual harassment to be "actionable," the harassment "must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Id.* at 67, 106

S.Ct. 2399 (citation omitted) (internal quotation marks omitted). The Court later clarified the *Meritor Savings Bank* framework, articulating the relevant standard for evaluating claims of sexual harassment based on unwelcome sexual communications or advances. *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21–22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). The Court stated:

> Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.

*Id.* Accordingly, consistent with *Harris,* hostile work environment sexual harassment claims have both an objective and subjective component. *See id.*

■ We have relied on federal law interpreting Title VII in our interpretation of the MHRA. *See, e.g., Frieler v. Carlson Mktg. Grp., Inc.,* 751 N.W.2d 558, 571 (Minn.2008); *Goins v. West Grp.,* 635 N.W.2d 717, 725 (Minn.2001). We continue to do so here.[3] Thus, in determining

**3.** Citing *Cummings v. Koehnen,* 568 N.W.2d 418 (Minn.1997), the court of appeals questioned the continued applicability of Title VII jurisprudence in the context of MHRA sexual harassment claims. *Rasmussen,* 817 N.W.2d at 196–97. The issue in *Cummings* involved the MHRA's sexual harassment language. 568 N.W.2d at 420. We held that "under the MHRA, a plaintiff alleging sexual harassment by a person who is of the same gender must prove that the conduct complained of meets the elements set forth in the definition of sexual harassment," but need not also show that the harassment was "based on sex" in that the "harassment affected one gender differently than the other." *Id.* at 423–24 (internal quotation marks omitted). We reasoned

that because the Legislature had included in the definition of "discrimination based on sex" conduct that constituted "sexual harassment," it is "not necessary for a sexual harassment plaintiff to prove that the harassment occurred 'because of sex' in addition to proving the elements of sexual harassment" as defined under the MHRA. *Id.* at 422 (internal quotation marks omitted). To read the statute otherwise would have led to the "absurd result[ ]" in that those in a single-gender workplace and those "who work with an 'equal opportunity harasser,' who harasses sexually both males and females" would remain unprotected by the statute. *Id.* at 423. We noted that our conclusion was a departure

whether the conduct had the purpose or effect of substantially interfering with a plaintiff's employment or created an intimidating, hostile, or offensive employment environment under the MHRA, we consider whether the conduct was sufficiently severe or pervasive to objectively do so and whether the plaintiff subjectively perceived her employment environment to be so altered or affected. *See Harris,* 510 U.S. at 21–22, 114 S.Ct. 367; *Goins,* 635 N.W.2d at 725.

■■■ With this standard in mind, we turn to the question raised on appeal, which is whether the district court erred in dismissing the Employees' sexual harassment claims. The standard of review that controls our examination of the district court's decision does not permit us to engage in fact-finding anew. *See Johnson v. Johnson,* 250 Minn. 282, 288, 84 N.W.2d 249, 254 (1957) ("It is not within the province of this court to determine issues of fact.... This is true even though this court might find the facts to be different if it had the factfinding function."); *see also Dunn v. Nat'l Beverage Corp.,* 745 N.W.2d 549, 555 (Minn.2008) ("[A]ppellate courts may not 'sit as factfinders,' and are 'not empowered to make or modify findings of fact.'" (citations omitted)); *Butch Levy Plumbing & Heating, Inc. v. Sallblad,* 267 Minn. 283, 293, 126 N.W.2d 380, 387 (1964) ("It is not within the province of this court to make or amend findings of fact."). Rather, we review the district court's fac-

tual findings for clear error. *Fletcher v. St. Paul Pioneer Press,* 589 N.W.2d 96, 101 (Minn.1999) (reviewing district court's findings of fact in a MHRA claim for clear error). That is, we examine the record to see "[i]f there is reasonable evidence" in the record to support the court's findings. *Id.* And when determining whether a finding of fact is clearly erroneous, we view the evidence in the light most favorable to the verdict. *In re Stisser Grantor Trust,* 818 N.W.2d 495, 507 (Minn.2012). To conclude that "[f]indings of fact ... are clearly erroneous" we must be " 'left with the definite and firm conviction that a mistake has been made.'" *Id.* (quoting *Rogers v. Moore,* 603 N.W.2d 650, 656 (Minn.1999)). Our review of legal questions, however, is de novo. *LaMont v. Indep. Sch. Dist. No. 728,* 814 N.W.2d 14, 18 (Minn.2012).

The parties disagree over whether the district court's determination that Zapolski's conduct was not sufficiently severe or pervasive so as to be actionable under the MHRA is a question of fact or one of law. The Employers and Zapolski rely on *Meyers v. Chapman Printing Co.,* in which the Kentucky Supreme Court concluded that "whether the evidence presented proves misconduct 'severe or pervasive'" is a question of fact. 840 S.W.2d 814, 821 (Ky. 1992). The Employees rely on federal case law for the proposition that the " 'ultimate determination' " of whether conduct is " 'sexual harassment' " as defined by the MHRA is a question of law.[4]

---

from the federal law "where proof of a disparate effect on one gender is a necessary element of any sexual harassment claim." *Id.* at 422 n. 5. While *Cummings* is a departure from federal case law, that departure is narrow, and neither party argues that the codification of the term "sexual harassment" in the MHRA or our decision in *Cummings* suggests that we should abandon the general framework established under Title VII case law.

4. The federal circuit courts disagree as to the standard of review that applies to hostile work environment sexual harassment claims. But the majority of federal circuit courts consider whether the conduct was objectively and subjectively severe or pervasive enough to create a hostile work environment to be a question of fact, subject to a clearly erroneous standard of review. *See, e.g., Winsor v. Hinckley Dodge, Inc.,* 79 F.3d 996, 999 (10th Cir.1996) ("We review the district court's

Ultimately, we need not resolve the standard of review dispute in this case. It is not necessary to resolve the standard of review question because, as explained below, the district court made two errors of law in its analysis. There is no dispute that we review questions of law de novo. *E.g., Frieler*, 751 N.W.2d at 566. Because the legal errors may have impacted the decision to dismiss the Employees' claims, we remand to the district court for further proceedings consistent with this opinion.

■ The first legal error arises from the district court's reliance on the fact that Zapolski's inappropriate workplace behavior was directed at men as well as women. Specifically, the court based its determination that Zapolski's conduct was not sufficiently severe or pervasive enough to create a hostile work environment, at least in part, on the fact that Zapolski's sexual comments were not directed solely at female employees. The Employees argue that the court erred as a matter of law in grounding its decision in the fact that Zapolski's sexually based behavior was directed at both males and females. We agree. The Employees' claims are for sexual harassment. In accordance with *Cummings*, a sexual harassment claim does not require proof that the conduct was directed at the victims because of sex. 568 N.W.2d at 422–24. If this element is not independently required under the MHRA, it cannot support the district court's determination that the conduct was not severe or pervasive enough to constitute actionable sexual harassment under Minn.Stat. § 363A.03, subd. 43(3).

The Employers nevertheless argue that the fact that Zapolski directed sexual comments at both male and female employees is relevant under *LaMont*, 814 N.W.2d 14. As we stated in *LaMont*, the gender of the target of inappropriate conduct is "important" to the inquiry into whether the conduct at issue was sufficiently severe or pervasive. *Id.* at 23. But *LaMont* is distinguishable. In *LaMont*, the plaintiff was complaining of a hostile work environment based on gender, not a hostile work environment based on sexual harassment. *Id.* at 19 (explaining that the MHRA permits "a hostile work environment claim based on sex, separate and apart from" a claim for "sexual harassment that creates a hostile work environment"). Given the nature of the plaintiff's claim in *LaMont*, it was relevant whether the conduct reflected discrimination between male and female em-

findings of no sexual harassment, adequate remedial measures, and no constructive discharge, under a clearly erroneous standard."); *Rennie v. Dalton*, 3 F.3d 1100, 1106 (7th Cir.1993) (stating that, as applied to a hostile work environment sexual harassment claim, "Rule 52(a) of the Federal Rules of Civil Procedure requires that we review the trial court's finding of facts under a clearly erroneous standard"); *Dwyer v. Smith*, 867 F.2d 184, 187 (4th Cir.1989) ("In Title VII actions, a district court's factual determinations are governed by Rule 52(a)'s clearly erroneous standard even if they resolve the ultimate issue of the action—such as, whether there was discrimination, sexual harassment, or discriminatory intent."); *Hall v. Gus Constr. Co.*, 842 F.2d 1010, 1013 (8th Cir. 1988) ("We must assess the trial court's factu-

al finding that the women were subjected to sexual harassment under the clearly erroneous standard of review."); *Henson v. City of Dundee*, 682 F.2d 897, 906 (11th Cir.1982) ("Normally, the court of appeals in a civil rights case will respect a finding of historical fact premised upon a credibility choice made by the district court unless that finding is clearly erroneous."). *But see Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864, 871 (9th Cir.2001) ("The district court's conclusions that Sanchez failed to establish his sexual harassment and retaliation claims present mixed questions of law and fact which we review de novo."); *Collins v. Baptist Mem'l Geriatric Ctr.*, 937 F.2d 190, 195 (5th Cir. 1991) ("The district court's finding is a mixed conclusion of law and fact, subject to the independent review of this court.").

ployees. *See id.* at 21, 23. Here, the sexual harassment claims at issue do not require the Employees to prove discriminatory conduct. *See Cummings,* 568 N.W.2d at 422–24. The fact that Zapolski directed inappropriate, sexual comments at both male and female employees, therefore, cannot support the district court's determination that the conduct was not sufficiently severe or pervasive to constitute actionable sexual harassment.

The second legal error arises from the district court's reliance on the fact that the Employees did not suffer adverse employment actions. Specifically, the court noted throughout its findings that the Employees had not lost promotions, pay, or hours because of their unwillingness to participate in talk of a sexual nature or engage in sexual acts. The Employees argue that the district court erred as a matter of law in focusing on the fact that the Employees did not suffer adverse employment action. We agree.

■ The district court's reliance on the fact that the Employees did not lose pay or other benefits demonstrates a fundamental misunderstanding of the nature of the Employees' causes of action. The fact that the Employees did not lose pay or other benefits could support an ultimate determination that sexual harassment in violation of Minn.Stat. § 363A.03, subd. 43(2) had not occurred. But this is not the type of sexual harassment at issue here. By relying on the absence of an adverse employment action to support the determination that Zapolski's conduct was not sufficiently severe or pervasive, the district court conflated paragraphs 2 and 3 of sub-

division 43 in section 363A.03. The Legislature has made different forms of sexual harassment illegal. *Compare* Minn.Stat. § 363A.03, subd. 43(2) (stating that sexual harassment occurs where "submission to or rejection of [sexually harassing] conduct ... is used as a factor in decisions affecting that individual's employment, public accommodations or public services, education, or housing)," *with id.,* subd. 43(3) (stating that sexual harassment occurs where sexually harassing conduct "has the purpose or effect of substantially interfering with an individual's employment, public accommodations or public services, education, or housing, or creating an intimidating, hostile, or offensive employment, public accommodations, public services, educational, or housing environment"). The district court erred as a matter of law in conflating them.

In sum, two separate errors of law infected the district court's determination that the Employees did not prove their sexual harassment claims. We are not able to ascertain exactly how the two errors of law impacted the district court's decision to dismiss the Employees' claims. Accordingly, we remand to the district court to reevaluate the evidence using the correct legal standard. *See State v. Engle,* 743 N.W.2d 592, 596 (Minn.2008) (concluding that remand was necessary where the district court made an error of law in findings issued after a bench trial); *State v. Mauer,* 741 N.W.2d 107, 115–16 (Minn. 2007) (holding that remand was necessary where it was unclear that the district court applied the proper legal standard in written findings issued after a bench trial).[5]

---

**5.** Justice Wright's dissent concludes that remand is not necessary because the evidence supports only one conclusion—the Employees proved actionable sexual harassment. The dissent acknowledges, however, that at least the subjective prong of a sexual harassment claim presents a question of fact that is reviewed under the clearly erroneous standard. Under the standard the dissent advocates, our obligation would be to construe the evidence in the light most favorable to the district court's verdict. *In re Stisser Grantor Trust,*

## II.

Because we are remanding to the district court, we also consider the question presented in the Employees' request for conditional cross-review. The Employees argue that the court of appeals erred in concluding that Zapolski could not be held individually liable under the aiding and abetting provision of the MHRA, Minn. Stat. § 363A.14. We agree with the court of appeals.

The MHRA makes it illegal for an "employer" to engage in the "unfair employment practice[s]" prohibited by the act. Minn.Stat. § 363A.08, subd. 2. " 'Employer' " is defined as "a person who has one or more employees," Minn.Stat. § 363A.03, subd. 16, and " 'person' " includes, in relevant part, a "partnership, association, [or] corporation," *id.*, subd. 30. In addition, the MHRA provides a basis for liability under an aiding and abetting theory. Under Minn.Stat. § 363A.14(1), "[i]t is an unfair discriminatory practice for any person ... [to] intentionally ... aid, abet, incite, compel, or coerce a person to engage in any of the practices forbidden by" the MHRA.

The Employees and amicus curiae argue that Zapolski may be held individually liable under Minn.Stat. § 363A.14. Specifically, they emphasize that one of the basic aspects of incorporation is that the entity is distinct from its shareholders. *See, e.g., Corcoran v. P.G. Corcoran Co.*, 245 Minn. 258, 269, 71 N.W.2d 787, 795 (1955) ("The basic theory of corporation law is that a corporation exists as an entity entirely separate and apart from its shareholders."). The Employees and amicus curiae suggest that a rule that would insulate an individual from aiding and abetting liability when he is the sole owner of a corporation and the sole sexual harasser is troublesome, as it would prevent individual liability for those who have a great deal of power and authority and who are solely responsible for committing harassing conduct.[6]

---

818 N.W.2d at 507. While the dissent acknowledges this rule, the dissent does not apply it. For example, rather than construing the evidence in the light most favorable to the verdict, the dissent faults the district court for not fully appreciating "the full measure of Rasmussen's perception of her work environment." And, in reaching the conclusion that the evidence as to whether Rasmussen subjectively perceived her work environment supports only one conclusion, the dissent overlooks Rasmussen's testimony that she told others that she "liked" her job and the fact that Rasmussen recommended that Moyer apply for a position with the Employers. As the district court found, Rasmussen's recommendation to Moyer "calls into question the severity and frequency of the allegedly offensive comments and behaviors as perceived by Rasmussen." The dissent also faults the district court for relying on the fact that the Employees did not seek treatment or counseling. The dissent notes that the Employees were not required to seek treatment or counseling in order to sustain their MHRA claims. But the dissent cannot contest the fact that the Employees did not seek such treatment. Simply because such treatment is not required to state a claim under the MHRA does not mean that the failure to seek such treatment is irrelevant as a matter of law to the Employees' subjective perception of their work environment. *See Goins*, 635 N.W.2d at 725 ("In ascertaining whether an environment is sufficiently hostile or abusive to support a claim, courts look at the totality of the circumstances."). These few examples are sufficient to show that, in our view, the record, when construed in the light most favorable to the verdict, is not as Justice Wright's dissent finds it to be. In discussing these examples we do not intend to condone the disgusting behavior at issue in this case or to suggest how the district court should resolve the matter on remand.

**6.** We have not addressed whether the definition of " '[e]mployer' " in Minn.Stat. § 363A.03, subd. 16, allows for individual liability, though Minnesota federal courts considering the issue have concluded that the MHRA does not impose individual liability on

■ Zapolski argues that the court of appeals did not err in concluding that he cannot be liable for aiding and abetting the Employers because he is the sole owner of both enterprises and is the sole individual accused of workplace misconduct. Zapolski concedes that the Employers, as business entities, each qualify as a "person" under Minn.Stat. § 363A.03, subd. 30, and can be aided or abetted, but contends that he cannot be liable as an aider or abettor under the MHRA because the Employers are vicariously liable for his acts. Thus, according to Zapolski, the Employers' liability and his liability, based on the exact same conduct, "are equivalent." Zapolski argues that the Legislature did not intend to create aiding and abetting liability in these circumstances. We agree with Zapolski.

Imposing liability on Zapolski as an aider and abettor would "create[ ] a strange and confusing circularity where the person who has directly perpetrated the harassment only becomes liable through the employer whose liability in turn hinges on the conduct of the direct perpetrator." *Perks v. Town of Huntington*, 96 F.Supp.2d 222, 228 (E.D.N.Y.2000) (quoting *Lippold v. Duggal Color Projects, Inc.*, No. 96–CIV–5869, 1998 WL 13854, at *3 (S.D.N.Y. Jan. 15, 1998)). If the Employers have committed unfair employment practices here under a theory of vicarious liability based on Zapolski's conduct, holding Zapolski liable for aiding and abetting essentially would reverse this liability pathway, making the Employers the primary wrongdoer, whose wrongdoing Zapolski must have aided and abetted.

In addition, holding a sole harasser liable as an aider and abettor of his employer would create individual liability for anyone who perpetrates the harassing conduct at issue. This is so because an individual can always be said to have substantially assisted in an employer's unfair employment practice when that individual actually perpetrates the conduct that is the basis for the employer's unfair practice. This result would be inconsistent with the Legislature's use of the narrower term "employer" when designating liability for unfair employment practices. Minn.Stat. § 363A.08, subd. 2; *see also Foley v. Mobil Chem. Co.*, 170 Misc.2d 1, 647 N.Y.S.2d 374, 381 (1996) (rejecting argument that supervisors should be held liable under aiding and abetting provision of human rights law because it would "essentially ignore, by rendering meaningless in most cases, the legislative choice of the word 'employer' "). Finally, elsewhere in the MHRA, the Legislature provides for individual liability. *See* Minn.Stat. § 363A.09, subd. 2 (making it "an unfair discriminatory practice for a real estate broker, real estate salesperson, or employee, or agent thereof" to engage in certain conduct). If the Legislature had intended to create liability for any individual employee who engaged in an unfair employment practice in the employment setting, it could have done so without resorting to a theory of aiding and abetting liability. For the foregoing reasons, we hold that Zapolski cannot be individually liable as an aider and abettor.

Affirmed in part, reversed in part, and remanded.

---

supervisors or managers. *Mehl v. PortaCo, Inc.*, 859 F.Supp.2d 1026, 1034 (D.Minn. 2012); *Waag v. Thomas Pontiac, Buick, GMC, Inc.*, 930 F.Supp. 393, 406–08 (D.Minn.1996). Here, the Employees do not argue that Zapolski is individually liable as an "employer"

under the MHRA. Thus, given the nature of the Employees' claims, the issue of whether, or under what circumstances, an individual may be held liable as an "employer" under the Act is not presented in this case.

Concurring in part, dissenting in part, WRIGHT, PAGE, JJ.

Concurring in part, dissenting in part, ANDERSON, PAUL H., PAGE, JJ.

WRIGHT, Justice (concurring in part, dissenting in part).

Jaime Rasmussen, Jennifer Moyer, and Kathe Reinhold (the Employees) proved that Brian Zapolski's conduct toward them was sexual harassment that created a hostile work environment in violation of the Minnesota Human Rights Act (MHRA), Minn.Stat. §§ 363A.03, subd. 43(3), 363A.08, subd. 2 (2012). Therefore, I respectfully dissent as to the majority's decision to reverse this aspect of the decision of the court of appeals and remand the Employees' hostile work environment claims to the district court. However, because I agree with the majority's conclusion that Zapolski cannot be held individually liable on an aiding and abetting theory, I concur solely in this aspect of the decision.

After a bench trial, the district court found that Zapolski, the Employees' supervisor and the sole owner of the businesses that employed them, engaged in sexually harassing conduct. With respect to Rasmussen, the district court found that Zapolski touched her posterior with his hands on two occasions. He showed her and other employees a nude photo in a Playboy magazine and compared the woman in the photo to Rasmussen. He suggested that Rasmussen watch a pornographic DVD. He "frequently" asked her about her sexual position preferences. Zapolski described his sexual desires in a "very explicit" manner, and he called Rasmussen sexually suggestive names. The district court also found that Zapolski's conduct made Rasmussen feel "very uncomfortable," that it created a "negative work environment" for Rasmussen, and

that Rasmussen expressly objected to Zapolski's conduct. Although one need not leave her employment to sustain a hostile work environment claim, see Pa. State Police v. Suders, 542 U.S. 129, 133–34, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004), the district court also found that Zapolski's conduct "may have been a partial factor in Rasmussen's decision to leave her employment."

With respect to Moyer, the district court found that Zapolski grabbed Moyer's waist, "told her that a girl her age should be having lots of sex," and questioned her about her sex life. Zapolski showed Moyer a nude photo in a Playboy magazine and compared the photo to Moyer's co-worker, Rasmussen. The district court also found that Zapolski sought Moyer's assistance in soliciting "other young women to have sex with him," and that he "bragged to her about his sexual prowess." Zapolski's conduct, the district court found, created a "negative," "uncomfortable," and "hostile" work environment for Moyer.

Finally, with respect to Reinhold, the district court found that "[o]n a daily basis during her brief employment, Zapolski would talk about sex" with Reinhold. Zapolski also talked to her about orgasms. During Reinhold's orientation at the beginning of her employment, Zapolski held Reinhold's hand and led her by the hand as he trained her for her tasks. Zapolski called Reinhold at work and asked if she would kiss him when he arrived. He even touched her chest when wood shavings had fallen on her sweater during one of her tasks. When Reinhold encountered Zapolski at a local store, Zapolski told Reinhold "it would be a perfect day to watch a football game on television and make love." In response to Zapolski's conduct and statements to her, Reinhold told Zapolski that she did not want to talk about sex and "dodged [Zapolski's] questions." Accord-

ing to the district court's findings, Zapolski "created a negative work environment for" Reinhold and made her feel "violated" and "embarrassed."

A hostile work environment sexual harassment claim under the MHRA requires proof that a party was subject to "unwelcome sexual advances, requests for sexual favors, sexually motivated physical contact or other verbal or physical conduct or communication of a sexual nature." Minn.Stat. § 363A.03, subd. 43 (2012). The Employers do not dispute the district court's factual findings regarding Zapolski's conduct toward each of the Employees. The focal point of the parties' dispute on appeal is whether Zapolski's conduct had "the purpose or effect of substantially interfering with an individual's employment ... or creating an intimidating, hostile, or offensive employment ... environment."[1] Id., subd. 43(3). When determining this disputed issue, both an objective inquiry and a subjective inquiry are conducted. Harris v. Forklift Sys., Inc., 510 U.S. 17, 21–22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). This dual inquiry requires us to consider both whether the conduct is sufficiently severe or pervasive to create an objectively hostile work environment and whether the plaintiff subjectively perceived her employment environment as hostile. Id.

The nature of my dissent is twofold. First, I dissent because, unlike the majority, I would address the standard of review issue presented by this case. In declining, at least expressly, to reach this issue, the majority leaves unanswered the important legal question raised in this appeal—namely the standards of review that apply to an MHRA hostile work environment claim. The question presented "is an important

one" on which our court should rule. Minn. R. Civ.App. P. 117, subd. 2(a). A decision by our court will "develop, clarify, or harmonize the law," and unless resolved by our court, this important question "is likely to recur." Id., subd. 2(d)(3); see also First Trust Co. v. Leibman, 445 N.W.2d 547, 549 n. 1 (Minn.1989) (stating that in exercising our discretionary review under Minn. R. Civ.App. P. 117 "we may review all issues we see as necessary to decide the case, however presented"). Therefore, I will take no part in playing "kick the can down the road" with a question of law that affects the legal protections of every worker—male and female— in Minnesota. For the reasons addressed below, I conclude that a de novo standard of review is the proper standard of review for the objective component of a hostile work environment claim and that a clearly erroneous standard of review should be employed for the subjective component of that claim.

Second, I dissent because I would not remand this case to the district court for any further proceeding, as none is necessary. Applying a de novo standard of review to the district court's conclusion that Zapolski's conduct did not create an objectively hostile work environment, I conclude that the district court erred. And when applying a clearly erroneous standard of review to the district court's findings that the Employees did not subjectively perceive their work environment as hostile, I also conclude that the district court erred. While I do not dispute the majority's assessment that the district court's decision was influenced by errors of law, I nonetheless disagree with the decision to remand. I disagree because even if one or both of the inquiries presented here

1. I will refer to the interference with an individual's employment or the creation of an intimidating, hostile, or offensive employment environment using the general term "hostile work environment."

involve issues of fact infected by errors of law, when "the record permits only one resolution of the factual issue," a remand to the district court is unwarranted. *Pullman–Standard v. Swint,* 456 U.S. 273, 292, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982); *see also Williams v. New Orleans S.S. Ass'n,* 688 F.2d 412, 416 (5th Cir.1982) (declining to remand despite district court's errors of law when "[t]he evidence show[ed] unmistakably that defendants discriminated purposefully" because "[a] remand on that issue would be a waste of time").

Based on the district court's findings as to Zapolski's conduct that the Employees endured and based on the credibility determinations made by the district court, which are not challenged on appeal, the Employees are entitled to prevail on their claims. If the conduct at issue in this case does not unmistakably violate the MHRA, I shudder to consider both the degrading conduct that any employee must endure in a Minnesota workplace and the unreasonably burdensome actions she must take to prove that her workplace was hostile so as to vindicate her legal right to be free from a hostile work environment. On the record before us, applying the appropriate legal standard, we need not delay or deny the Employees a just resolution of their hostile work environment claims.

## I.

To perform our appellate review, we first must decide the standards of review that apply to the dual inquiry of whether harassing conduct created an objectively hostile work environment and whether the plaintiff subjectively perceived her work environment as hostile. The appropriate standards of review depend on whether these questions pose questions of law, questions of fact, or mixed questions of law and fact.

We have described a mixed question of law and fact as one that requires an "appellate court to apply the controlling legal standard to historical facts as determined by the trial court." *State v. Wiernasz,* 584 N.W.2d 1, 3 (Minn.1998). The objective question before us presents precisely this category of question. Whether the work environment for the Employees was objectively hostile is an inquiry that requires us to "apply the controlling legal standard" (whether the harassing conduct was sufficiently severe or pervasive so as to objectively interfere substantially with an individual's employment or create an intimidating, hostile, or offensive employment environment) to "historical facts as determined by the trial court" (the district court's factual findings that relate to the nature, frequency, and circumstances surrounding the conduct).[2] *See id.; see also Barbour v. Browner,* 181 F.3d 1342, 1348 (D.C.Cir.1999) (stating that "[w]hether the harassment in a particular case can be considered 'severe or pervasive' is manifestly a mixed question of law and fact" because in answering it, a court "aligns the established historical facts along side the legal rule, and determines whether the facts satisfy the statutory standard"). As such, determining whether the harassing conduct created an objectively hostile work environment is a mixed question of law and fact.

**2.** Some objective standards, such as negligence, are treated as questions of fact. *See, e.g., Canada by Landy v. McCarthy,* 567 N.W.2d 496, 505 (Minn.1997). "But the class of plaintiffs seeking to recover for negligence is limited to those who have suffered harm," whereas under the MHRA, whether conduct was sufficiently severe or pervasive so as to create an objectively hostile work environment is "the test of whether *legal harm* has been suffered." *Harris,* 510 U.S. at 24, 114 S.Ct. 367 (Scalia, J., concurring) (emphasis added).

This mixed question of law and fact is one that warrants de novo review for at least two reasons. First, a de novo standard of review is preferable when greater scrutiny by an appellate court will assist in developing and clarifying the governing legal standard. *See Barbour*, 181 F.3d at 1345, 1348. Whether conduct creates an objectively hostile work environment is a standard that "acquire[s] content only through application." *See Ornelas v. United States*, 517 U.S. 690, 697, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) (holding that de novo standard of review should apply to reasonable-suspicion and probable-cause determinations); *see also State v. Chavarria–Cruz*, 784 N.W.2d 355, 363 (Minn.2010) (stating that our court reviews "fact-intensive, mixed questions of constitutional law" de novo (citation omitted) (internal quotation marks omitted)); *State v. Lemieux*, 726 N.W.2d 783, 787 (Minn. 2007) (stating that "determinations of reasonable suspicion and probable cause ... should be reviewed de novo on appeal" (citation omitted) (internal quotation marks omitted)). De novo review of a district court's application of the objective hostility standard brings clarity to the content of the standard and promotes consistency in the standard's application, resulting in a "significant benefit to employees and employers alike." *Barbour*, 181 F.3d at 1348. Moreover, after a district court makes findings regarding historical facts (such as whether certain harassing conduct took place and, if so, under what circumstances), an appellate court is fully capable of considering that conduct and its circumstances to determine whether they created an objectively hostile work environment without disturbing the district court's credibility determinations that underlie the historical findings of fact.

It is true that each harassment case will present a unique factual situation, which to a degree affects the precedential value of any individual case. *Id.* De novo review nonetheless permits the development of the legal standard across a body of cases, ultimately ensuring a measure of consistency in the application of the legal standard. *See Ornelas*, 517 U.S. at 698, 116 S.Ct. 1657; *see also* Shira A. Scheindlin & John Elofson, *Judges, Juries, and Sexual Harassment*, 17 Yale L. & Pol'y Rev. 813, 813–15 (1999) (observing that hostile work environment sexual harassment jurisprudence is "both tremendously important and profoundly ambiguous" and arguing that a de novo standard of review would help clarify the law). Without de novo review, variability in community standards, regional norms, or employment settings will undoubtedly result in disparity as to what type of sexually harassing conduct makes a work environment "objectively" hostile. *See Jenson v. Eveleth Taconite Co.*, 130 F.3d 1287, 1292 (8th Cir.1997) ("We emphatically reject the ... conclusion ... that the fact that the culture of the Iron Range mining industry allowed sexual harassment is a mitigating factor for Eveleth Mines."); *see also Rabidue v. Osceola Ref. Co.*, 805 F.2d 611, 626 (6th Cir.1986) (Keith, J., concurring in part, dissenting in part) (rejecting the notion that a court should consider " 'prevailing' " attitudes and conduct in the workplace when considering whether a hostile work environment existed, because such an analysis suggests "that a woman assumes the risk of working in an abusive, anti-female environment").[3] The Legislature enacted

---

**3.** Judge Damon J. Keith's dissenting view in *Rabidue* is the prevailing view in numerous other cases. *See, e.g., Conner v. Schrader–Bridgeport Int'l, Inc.*, 227 F.3d 179, 194 (4th Cir.2000) (rejecting contention that a traditionally rugged or inhospitable work environment provides an exception to the protections in Title VII); *Smith v. Sheahan*, 189 F.3d 529,

the MHRA to protect all Minnesota workers. A de novo standard of review of whether sexually harassing conduct creates an objectively hostile work environment will help provide this protection and will provide much needed guidance to workers, employers, legal practitioners, and judges[4] by promoting predictability and uniform application of the MHRA's protections throughout the State of Minnesota.

A second, but no less important, reason for employing de novo review is the nature of the rights that the MHRA affords. The Legislature has declared that a workplace free from the conduct prohibited by the MHRA is "a civil right." Minn.Stat. § 363A.02, subd. 2 (2012). As in the context of mixed questions of law and fact that implicate constitutional rights, the importance of vindicating the right at issue warrants de novo review. *See Thompson v. Keohane*, 516 U.S. 99, 115, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995) (noting that independent review of "in custody" determinations protects the right against self-incrimination). Like its federal counterpart, the MHRA is a civil rights act, and therefore serves to effectuate the rights of citizens guaranteed under our constitution. *See* Minn.Stat. § 363A.02, subd. 1(b) (2012) (stating that the conduct prohibited by the MHRA "threatens the rights and privileges of the inhabitants of this state and menaces the institutions and foundations of democracy"); *see also* 42 U.S.C. § 2000e–2(a) (2006) (making it unlawful to "discriminate" or "to limit, segregate, or classify" employees based on "race, color,

religion, sex, or national origin"); *Black's Law Dictionary* 263 (8th ed. 2004) (defining "civil-rights act" as a statute enacted "for the purpose of implementing and giving further force to the basic rights guaranteed by the Constitution"). To characterize the inquiry of whether Zapolski's conduct created an objectively hostile work environment as a pure question of fact would fail to identify accurately the nature of the question we review and would denigrate the civil right that is at issue.

Vindication of the right to be free from sexual harassment in one's employment environment should not be postponed in this case. Nor should it be subject to the vagaries of social status, cultural norms, economic status, or the same sexist norms that this civil right intends to eradicate. It is evident when applying a de novo standard of review that the requisite objective threshold has been met. In *Nichols v. Azteca Restaurant Enterprises, Inc.*, the Ninth Circuit reversed the district court and concluded that the complaining employee had established an objectively hostile work environment when he testified that his co-workers "habitually called him sexually derogatory names, referred to him with the female gender, and taunted him for behaving like a woman." 256 F.3d 864, 871–72 (9th Cir.2001) (applying de novo standard of review).

Yet, we need not go beyond Minnesota's border to find legal support for the conclusion that the conduct at issue here created an objectively hostile work environment. In 1980, we concluded that a worker had

---

534–35 (7th Cir.1999) (noting that although "the severity of alleged harassment must be assessed in light of the social mores of American workers and workplace culture" there is not an "assumption-of-risk defense to charges of workplace discrimination"); *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 564 (6th Cir.1999) ("We do not believe that a woman

who chooses to work in the male-dominated trades relinquishes her right to be free from sexual harassment; indeed, we find this reasoning to be illogical...").

**4.** MHRA claims are decided "by a judge sitting without a jury." Minn.Stat. § 363A.33, subd. 6 (2012).

been sexually harassed when she was grabbed between the legs by a male co-worker on one occasion and when she was subjected to sexually derogatory statements and sexual advances. *Cont'l Can Co. v. State,* 297 N.W.2d 241, 244, 249 (Minn.1980). Here, the Employees endured Zapolski's discussions of his sexual experiences and proclivities, were regularly asked about their sexual desires, and were called sexually suggestive names. In addition, each Employee was subjected to at least one incident of Zapolski's inappropriate and unwanted physical touching. Zapolski also exposed Rasmussen and Moyer to pornographic material in the workplace, and he made Rasmussen the subject for comparison to the pornography in discussions he led with her and her co-workers. Thirty-three years after our decision in *Continental Can,* it is evident when applying a de novo standard of review to the record before us that the district court erred by concluding that Zapolski's conduct did not create an objectively hostile work environment.

Even if one applies a clearly erroneous standard of review to the objective question before us, the majority's decision to remand in this case is befuddling. When applying a clearly erroneous standard, we may set aside the district court's findings of fact if after reviewing the evidence, we are "left with the definite and firm conviction that a mistake has been made." *Minn. Pub. Interest Research Grp. v. White Bear Rod & Gun Club,* 257 N.W.2d 762, 783 (Minn.1977). We will not disturb the findings of the district court, however, "if they are reasonably supported by evidence in the record considered as a whole." *Hubbard v. United Press Int'l, Inc.,* 330 N.W.2d 428, 441 (Minn.1983). We give due regard to the district court's assessment of witness credibility, Minn. R. Civ. P. 52.01, and we view the evidence in a light most favorable to the district

court's findings, *Trondson v. Janikula,* 458 N.W.2d 679, 682 (Minn.1990). Our review of a district court's findings of fact is deferential, but our review is not abject. *Carr v. Allison Gas Turbine Div., Gen. Motors Corp.,* 32 F.3d 1007, 1008 (7th Cir. 1994). Although generally we remand to the district court when a finding of fact is infected by errors of law, remand is not required when "the record permits only one resolution of the factual issue." *Pullman–Standard,* 456 U.S. at 292, 102 S.Ct. 1781.

If one assumes both that the district court's determination that Zapolski's conduct did not create an objectively hostile work environment is a finding of fact *and* that this finding was infected by the legal errors identified by the majority, the finding is nonetheless clearly erroneous and remand remains unnecessary. *See League of United Latin Am. Citizens, Council No. 4434 v. Clements,* 999 F.2d 831, 877 (5th Cir.1993) (declining to remand when "under controlling law, the evidence [did] not support" the district court's findings); *United States v. Caballero,* 936 F.2d 1292, 1297–98 & n. 5 (D.C.Cir.1991) (indicating that remand is unnecessary when a reviewing court can "conclude on the record before it that the trial court's finding ... was clearly erroneous"); *cf. United States v. Maragh,* 894 F.2d 415, 420 (D.C.Cir. 1990) (remanding rather than reversing when the court could *not* conclude that the district court's finding of fact, which was infected by errors of law, was clearly erroneous).

In finding that Zapolski's conduct did not create an objectively hostile work environment, the district court relied in part on its finding that the Employees were never explicitly sexually propositioned. This underlying finding of fact is clearly erroneous and contradicted by the district court's earlier finding that Zapolski asked

Reinhold "if she would kiss him when he came to work," to which Reinhold replied "no." Notwithstanding Reinhold's refusal, Zapolski's request is a sexual proposition. Although Moyer was not personally propositioned, the district court found that during Zapolski's sexual discussions with her, Zapolski "attempt[ed] to have Moyer solicit other young women to have sex with him." In fact, the district court found that this solicitation request "created a hostile work environment."

In their defense, the Employers contend that Zapolski touched the Employees inappropriately only on a handful of occasions, that some of Zapolski's comments were only offensive utterances, and the novel defense theory that because Zapolski did not physically force the Employees to engage in sex with him, his conduct could not have been sufficiently severe or pervasive so as to create an objectively hostile work environment. Although accepted by the district court as persuasive, these contentions merely demonstrate that Zapolski's conduct could have been *more* severe or pervasive. They cannot, however, be relied on to mitigate conduct that has already reached a level of severity or pervasiveness so as to create an objectively hostile work environment in violation of the MHRA. Even when viewed in a light most favorable to the district court's findings, the record is replete with Zapolski's regularly occurring, unwanted, highly inappropriate sexual conduct. The district court's finding that Zapolski's conduct was not sufficiently severe or pervasive so as to create an objectively hostile work environment is not "reasonably supported by evidence in the record considered as a whole." *Hubbard*, 330 N.W.2d at 441, 444 (finding clear error where the record did "not support the inference, drawn by the trial court").

I am left with a definite and firm conviction that a mistake has been made. That mistake can and should be remedied today. The district court's finding that the harassment committed by Zapolski was not sufficiently severe or pervasive so as to create an objectively hostile work environment is clearly erroneous. Therefore, even if the question of whether a work environment is objectively hostile is a question of fact that was influenced by an error of law, the record permits only one resolution of that factual issue. A remand on this issue is not required.

## II.

Although the question of whether an employee's work environment was objectively hostile is a mixed question of law and fact subject to de novo review, the question of whether a particular employee subjectively perceived her work environment as hostile is a question of fact reviewed under the clearly erroneous standard. *Smith v. Nw. Fin. Acceptance, Inc.*, 129 F.3d 1408, 1412–13 (10th Cir.1997) (applying a de novo standard of review to the objective prong of the hostile work environment inquiry, but reviewing "for clear error the [district] court's factual finding" with regard to subjective hostility). Applying the clearly erroneous standard in this case, it is evident that the district court clearly erred in finding that the Employees did not subjectively perceive their work environment as hostile.

The district court's finding that Rasmussen did not perceive Zapolski's conduct as creating a hostile work environment is clearly erroneous because the district court relied on facts that do not establish the full measure of Rasmussen's perception of her work environment throughout the course of her employment. Notwithstanding its finding regarding Rasmussen's perception, the dis-

trict court also found, and the record supports, that Rasmussen expressly objected to some of Zapolski's conduct and that Zapolski's conduct—including his comparison of Rasmussen to a Playboy centerfold in conversations with her and her co-workers—made Rasmussen feel "violated" and "uncomfortable," and created a "negative work environment" for Rasmussen.

The district court's finding that Moyer did not subjectively perceive her work environment as hostile likewise is clearly erroneous. The underlying factual findings on which the district court relied in making this ultimate finding appear to be that Moyer did not tell Zapolski that his conduct was offensive and that Moyer did not seek counseling. But Moyer expressly protested when Zapolski called her his girlfriend. Moreover, the absence of psychological harm cannot be determinative of whether Moyer perceived her work environment to be hostile. *See Harris,* 510 U.S. at 22, 114 S.Ct. 367 ("So long as the environment would reasonably be perceived, and is perceived, as hostile or abusive, there is no need for it also to be psychologically injurious." (citation omitted)).

The district court's finding that Reinhold did not subjectively perceive her work environment as hostile also is clearly erroneous. In making this finding, the district court relied on its determination that Reinhold did not complain about Zapolski's behavior, the absence of "lasting psychologi-cal effects" caused by Zapolski's conduct, and the fact that Reinhold did not seek treatment or counseling. That Reinhold did not complain about Zapolski's behavior is contrary to both Reinhold's testimony and the district court's findings. Moreover, the district court rejected Reinhold's hostile work environment claim because she did not suffer "lasting psychological effects" and because she did not seek counseling. But neither is required under the MHRA. Finding Reinhold to be a "substantially credible" witness, the district court determined that Zapolski's conduct created a "negative work environment" for Reinhold and made her feel "violated" and "embarrassed." That Reinhold quit after a short tenure marred by daily instances of offensive sexually suggestive comments and conduct is probative of the district court's clear error.

In sum, the district court's findings that the Employees did not perceive their work environment as hostile are not reasonably supported by the record when considered as a whole. Because the record permits only one resolution of these factual issues, remand is not warranted. The majority's decision to do so is alarming because implicit in the decision to remand is the determination that there is a possibility that the record before us does *not* require the conclusion that the Employees were victims of sexual harassment in violation of the MHRA.[5]

---

**5.** The majority is critical of my application of the clearly erroneous standard of review to the district court's findings that the Employees did not subjectively perceive their work environment as hostile. Such criticism is unwarranted. In reaching the conclusion that the district court clearly erred, I have not overlooked certain evidence in the record as the majority contends. A finding is clearly erroneous when, *"although there is evidence to support it,"* we are "left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948); *see also, e.g., Olsen v. Olsen,* 562 N.W.2d 797, 800 (Minn.1997); *Montgomery Ward & Co. v. Cnty. of Hennepin,* 482 N.W.2d 785, 788 (Minn.1992); *In re Estate of Balafas,* 293 Minn. 94, 96, 198 N.W.2d 260, 261 (1972). That legal standard has been met here.

To conclude that Zapolski's conduct did not create an objectively hostile work environment and to find that the Employees did not subjectively perceive their work environment as hostile would establish a legal standard for hostile work environment sexual harassment claims that closes the door to recovery to all but a very limited class of plaintiffs. This legal standard is contrary to the intended scope of the MHRA's protections, which we are obligated to "construe[ ] liberally for the accomplishment of the purposes thereof." Minn.Stat. § 363A.04 (2012).

To find reasonable support for the district court's findings in the form of evidence that Zapolski did not *always* act inappropriately and evidence that Zapolski could have, but did not, perpetrate acts of harassment amounting to explicit demands for sex would trivialize the seriousness of the conduct that Zapolski actually perpetrated. A plaintiff need not show that she was subjected to sexual advances, requests for sexual favors, sexually motivated physical contact, *and* other verbal or physical conduct or communication of a sexual nature before the harassing conduct can be deemed sufficiently severe or pervasive so as to create an objectively and subjectively hostile work environment. The plain language of Minn.Stat. § 363A.03, subd. 43 allows for any single category of conduct to serve as the basis for a hostile work environment sexual harassment claim.

The majority's decision will unnecessarily delay, if not deny, the Employees a decision on the Employers' liability for hostile work environment sexual harassment claims arising from workplace conduct that we long ago deemed unlawful.[6] It is a violation of the MHRA to subject any worker—regardless of her economic circumstances and regardless of the employment setting in which she works—to the unwanted sexual conduct and statements that each of the Employees experienced. Sadly, in 2013, these workers who alleged and proved conduct that is *at least* as egregious as the actionable sexual harassment in *Continental Can* face the prospect of justice delayed *and* denied.

PAGE, Justice (concurring in part, dissenting in part).

I join in the concurrence and dissent of Justice Wright.

ANDERSON, PAUL H., Justice (concurring in part, dissenting in part).

I concur in part and respectfully dissent in part. I agree with the conclusion reached by both the majority and the court of appeals with respect to aiding-and-abetting liability. Brian Zapolski cannot be liable to the three female employees on an aiding-and-abetting theory. But I dissent in part because the majority fails to explicitly address the standard of review issue presented by this case. Like my colleague Justice Wright, I conclude that this case presents two questions: one that is a mixed question of law and fact and one

---

**6.** Contrary to the majority's contention, its decision marks a retreat from *Continental Can.* Although we criticized the district court in *Continental Can* for engaging in supplemental fact finding when reviewing the hearing examiner's decision, 297 N.W.2d at 250, I have not taken that improper liberty here. Rather, my analysis disregards the district court's errors of law and reviews the district court's findings in light of the record before us. Moreover, in *Continental Can*, we ad-

dressed the district court's supplemental fact finding in the course of our analysis of the employer's liability under the MHRA. Our conclusion that the conduct at issue there "amounted to ... sexual harassment" was reached after "[o]ur independent review of the record." *Id.* at 249. Having conducted an independent review of the record before us, it is evident that the same conclusion is warranted here.

that is a question of fact. Like Justice Wright, I would apply a de novo standard of review to the question of whether Zapolski's misconduct was sufficiently severe or pervasive so as to create an objectively hostile work environment and a clearly erroneous standard of review to the question of whether an employee perceived the work environment as hostile.

I also dissent in part because, even if a clearly erroneous standard of review applies to both the question of objective hostility and the question of subjective hostility, I disagree with the majority's conclusion that the district court's findings of fact are not clearly erroneous. This conclusion, if not explicit, is at a minimum implied by the majority's reasoning in this case. Whichever standard of review is applied, I would conclude that no remand is required or warranted. Given the record before us, which we must thoroughly examine, the district court's findings are clearly erroneous. I find it extraordinary that the majority concludes that Zapolski's offensive and egregious misconduct may not be actionable. Because I am left with the definite and firm conviction that the district court erred, I join the concurrence and dissent of Justice Wright.

Given the nature and scope of the error being made today, I conclude that it will not suffice to confine my reaction to the majority's decision to the limited act of joining the concurrence and dissent of my colleague. I believe something more needs to be said about the message the majority delivers to Minnesota's citizens, whether those citizens are male or female, young or old, rich or poor. The unfortunate consequence of the majority's opinion may well be that offensive and repulsive sexual misconduct in the workplace, like Zapolski's verbal and physical misconduct, will be much more difficult to curtail in Minnesota and that many victims of similar misconduct will be left without a remedy under the law.

The three employees in this case, Jaime Rasmussen, Jennifer Moyer, and Kathe Reinhold, endured a great deal of verbal and physical sexually motivated misconduct while working for Two Harbors Fish Company d/b/a Lou's Fish House and BWZ Enterprises (collectively "Two Harbors Fish"). The conduct was directed at them by their supervisor, Zapolski. Zapolski touched Jaime Rasmussen on her posterior with his hands on at least two occasions and repeatedly referred to Rasmussen using sexually suggestive pet names.[1] Zapolski showed Rasmussen and other employees nude photos of a woman in a Playboy magazine, and asked Rasmussen and others if the woman in the photos looked like Rasmussen. He also suggested that Rasmussen take a pornographic DVD home with her and watch it. Zapolski frequently asked Rasmussen about her sexual-position preferences and repeatedly told Rasmussen about his own sexual desires. Rasmussen repeatedly objected to Zapolski's behavior, but Zapolski ignored the objections and persisted with his verbal and physical sexually motivated misconduct. Despite Zapolski's misconduct, Rasmussen, who is the mother of one child and whose husband was laid off at the time, continued to work for Two Harbors Fish. When her family's economic circumstances allowed her to end her employment, she did so.

Jennifer Moyer experienced similar sexually motivated misconduct by Zapolski. About two or three weeks after Moyer, a single mother with one child, started working for Two Harbors Fish, Zapolski began to ask Moyer about her sex life and began

---

1. The sexually suggestive pet names included: "honey," "beautiful," and "sexy."

telling her about his own sex life. Zapolski also asked Moyer if she had any single friends that she "could hook him up with" and told her that he would be "willing to pay for it."[2]  Moyer was touched by Zapolski at least once when Zapolski grabbed her waist. In addition, Moyer was shown the photo in the Playboy magazine and was asked if the woman in the photo reminded her of Rasmussen. Zapolski's misconduct made Moyer feel "[e]xtremely violated" and "uncomfortable."

After working at Two Harbors Fish for slightly longer than three months, Moyer quit her job. On the day that Moyer quit, Zapolski scolded her for using her cell phone at work. Moyer became upset because she attempted to limit the use of her cell phone while at work to checking on the status of her young child. Nevertheless, Moyer stayed on the job after being scolded by Zapolski. It was not until later that same day, when Moyer talked with her mother about Zapolski's inappropriate sexual conduct, that Moyer ended her employment at Two Harbors Fish. The district court and the majority diminish the nature of Zapolski's inappropriate sexual conduct by treating Moyer's decision to end her employment as being significantly related to Zapolski's concern about Moyer's use of her cell phone while at work. This explanation lacks significant support in the record and mistakenly attempts to switch the focus away from what Zapolski was doing to Moyer and how Zapolski's misconduct affected Moyer's work environment.

Kathe Reinhold was also on the receiving end of Zapolski's offensive sexual misconduct in the workplace. Zapolski began making sexual comments to Reinhold on her first day of work at Two Harbors Fish and did so every day thereafter. Reinhold, who is the single mother of a teenage son, attempted to rebuff these comments by telling Zapolski that she was very modest. Reinhold testified that she was angry that she was "subjected to that type of conversation" as part of her employment. Like Rasmussen and Moyer, Reinhold was physically touched by Zapolski, including several occasions when Zapolski swept his hands across her waist or posterior and another occasion when Zapolski inappropriately picked a sliver of wood off of Reinhold's chest. Instances of physical touching made Reinhold feel "terribly embarrassed" and at times "uneasy" or "frightened." Also, on one occasion Zapolski called Reinhold while she was working at the Two Harbors Fish store and asked Reinhold if she was going to give him a kiss when he came into work. Reinhold said, "no." Reinhold testified that she was "horrified by [Zapolski's] behavior." Reinhold quit working for Two Harbors Fish after only six and a half shifts because she "was tired of the sexual harassment."

The majority acknowledges that Zapolski committed inappropriate verbal and physical sexually motivated misconduct in the workplace, that Rasmussen, Moyer, and Reinhold were the targets of the misconduct, and that all three women made repeated efforts to reject, fend off, and stop the misconduct. Yet, if not explicitly, at least by implication, the majority concludes that the Lake County District Court did not clearly err when it found that Zapolski's inappropriate sexually motivated misconduct was not sufficiently severe or pervasive so as to objectively and subjectively "substantially interfer[e] with [the three women's] employment . . . or creat[e] an intimidating, hostile, or offensive employment . . . environment." Minn. Stat. § 363A.03, subd. 43(3) (2012). As I stated earlier, I view the majority's conclu-

2. The "it" here refers to "hook[ing] him up." Hook up in this context refers to "[a]n act of casual sex." *The American Heritage Dictionary* 846 (5th ed. 2011).

sion, whether explicit or implicit, to be extraordinary—even incogitable. Its conclusion is difficult to explain. Perhaps the majority's conclusion is the result of its view that our court's hands are so tethered by the clearly erroneous standard of review that we may do nothing in response to the district court's findings. If this is so, the majority's view is as erroneous as are the district court's findings. We are not so bound. Given our authority to conduct a thorough and independent review of the record, I fail to understand why the majority takes the position that it is so constrained and chooses to respond so passively in light of Zapolski's actionable misconduct.

Under the clearly erroneous standard of review, which the majority appears to have applied in this case, we are not required to sustain every finding of fact made by a district court even when there is some evidence to support the finding. *Montgomery Ward & Co. v. Cnty. of Hennepin,* 482 N.W.2d 785, 788 (Minn.1992). When, after "our careful consideration of the entire record" and after juxtaposing the record with the district court's findings, we are left with a definite and "firm conviction that a mistake has been made," we are duty-bound to reverse the decision of the lower court. *Id.; Hanka v. Pogatchnik,* 276 N.W.2d 633, 635 (Minn.1979). Without question, we must give "due regard ... to the opportunity of the trial court to judge the credibility of the witnesses." Minn. R. Civ. P. 52.01. But our deference is not absolute. *See United States v. U.S. Gypsum Co.,* 333 U.S. 364, 394–95, 68 S.Ct. 525, 92 L.Ed. 746 (1948) (noting that the clearly erroneous rule was adopted to reflect a standard under which a district court's findings, "when dependent upon ... the candor and credibility of the witnesses" were given "great weight," but "were never conclusive"); *see also Santa Fe Pac. Corp. v. Cen. States, Se. and Sw.*

*Areas Pension Fund,* 22 F.3d 725, 727 (7th Cir.1994) (noting that "the clear-error standard is not a rubberstamp").

Admittedly, our case law reflects some lack of clarity with regard to the level of deference required under our clearly erroneous standard. Our clearly erroneous standard of review is articulated in Minn. R. Civ. P. 52.01 and contains language that is substantially the same as the corresponding federal rule. Minnesota Rule of Civil Procedure 52.01 states that "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." The corresponding federal rule states that "[f]indings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility." Fed.R.Civ.P. 52(a)(6); *see also In re Estate of Balafas,* 293 Minn. 94, 96, 198 N.W.2d 260, 261 (1972) (noting that the clearly erroneous rule is "identical for [the Minnesota and federal] court systems").

In *Tonka Tours, Inc. v. Chadima,* we stated that a district court's findings of fact "will not be set aside unless they are clearly erroneous" and noted that "when the lower court is the trier of fact, its findings on disputed questions are entitled to the same weight as a jury verdict." 372 N.W.2d 723, 726 (Minn.1985); *see also Walters v. Common Sch. Dists. 2550, 2551, 2583, & 2585,* 265 Minn. 284, 294–95, 121 N.W.2d 605, 612 (1963) (citing the clearly erroneous standard in Minn. R. Civ. P. 52.01 and stating that "when an action is tried by a court without a jury its findings are entitled to the same weight as the verdict of a jury"). But in *Balafas,* we noted that the clearly erroneous standard,

"as it has been applied both by the Federal courts and by this court, ... clearly establishes a broader scope of appellate review than that applied when the court is reviewing findings of a jury." 293 Minn. at 96, 198 N.W.2d at 261. We went on to say:

> [T]he scope of review under this rule may now be regarded as the broadest exercised by an appellate court for, even though there is evidence to support a finding, the finding can be held to be clearly erroneous if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."

*Id.* (quoting *United States v. Or. State Med. Soc'y*, 343 U.S. 326, 339, 72 S.Ct. 690, 96 L.Ed. 978 (1952)); *see also Runia v. Marguth Agency, Inc.*, 437 N.W.2d 45, 48 (Minn.1989) (citing Minn. R. Civ. P. 52.01 and noting that "[t]he standard for review of a bench trial is broader than the standard for jury verdicts").

The *Balafas* description of the scope of review under our clearly erroneous standard appears to accurately reflect the origins of the standard as articulated in Rule 52.01. The clearly erroneous standard was intended "to make applicable the then prevailing equity practice" in federal courts and was a rejection of the notion that the findings of fact made by a district court should be given the same weight as a jury's verdict. *U.S. Gypsum Co.*, 333 U.S. at 394–95, 68 S.Ct. 525. In *U.S. Gypsum Co.*, the United States Supreme Court stated that "[s]ince judicial review of findings of trial courts does not have the statutory or constitutional limitations on judicial review of findings by administrative agencies or by a jury, this Court may reverse findings of fact by a trial court where 'clearly erroneous.' " [3] *Id.* at 395, 68 S.Ct. 525 (footnotes omitted) (citations omitted). And as Wright and Miller note, "[i]t is simply wrong to say ... that the 'findings will be given the force and effect of a jury verdict.' ... [H]istory is clear that those who drafted the [clearly erroneous] rule rejected proposals to apply the limited review of a jury verdict to the findings of a judge." 9C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2585 (3d ed. 2008) (quoting *Stoody Co. v. Royer*, 374 F.2d 672, 681 (10th Cir.1967)). *But see G.C. Kohlmier, Inc. v. Albin*, 257 Minn. 436, 443, 101 N.W.2d 909, 914 (1960) (stating that "when an action is tried by a court without a jury its findings are entitled to the same weight as the verdict of a jury" and that "[t]he adoption of Rule 52.01 of Rules of Civil Procedure ... made no change in the method of review of findings of fact").

I previously noted my strong disagreement with what appears to be the majority's unvoiced intent to apply and be unduly restrained by its interpretation of our clearly erroneous standard of review. This choice has led it to respond passively in light of the unlawful conduct in the workplace at Two Harbors Fish that was both severe and pervasive enough to create a hostile work environment. Perhaps it is the majority's misunderstanding of the degree of deference we afford to a district court's findings under the clearly erroneous standard that has motivated it to make an almost heroic effort to ignore the district court's erroneous findings. The district court made a very serious

---

**3.** Applying a standard of review to the findings of a district court that is less deferential than the standard of review applied to the findings of a jury makes infinite sense. A reviewing court cannot evaluate the fact-finding that takes place inside the jury room. But when a district court acts as the finder of fact, it must "find the facts specially and state separately its conclusions of law thereon," Minn. R. Civ. P. 52.01, thereby presenting a clear picture of the district court's fact-finding on review.

error in judgment in its findings when it was confronted with behavior that constitutes classic sexually motivated misconduct in the workplace. The majority compounds this serious error in judgment by allowing the views that inform the error to be applied not only to conduct in Lake County, but to conduct in the entire State of Minnesota. The majority has in essence used our standard of review as a shield, behind which to abdicate our responsibility to review the district court's findings for error.

I do not intend to convey, either explicitly or implicitly, the impression that our clearly erroneous standard of review is not a deferential standard—it is. But our case law indicates that the application of this standard does not require us to defer to the district court's findings of fact when, after our careful consideration of the entire record, we are left with a definite and firm conviction that a mistake has been made. Given the facts of this case, it is hard—nay impossible—for me to conclude that a mistake has not been made by the district court.[4] Thus, I am more than a little mystified by the fact that the majority fails to reach a similar conclusion. Nevertheless, when confronted with a mistake as egregious as the one made by the district court in this case, I will do what I can to prevent the view that provides the underpinnings for that mistake from becoming the standard for what is considered actionable verbal and physical sexual misconduct in a Minnesota workplace. This is why I dissent and write separately.

When I first became an appellate judge in 1992, I believed that our jurisprudence was irrevocably and steadfastly headed down a one-way path toward ending sexual harassment in the workplace. I also believed that the policies of our State and the jurisprudence of our court, when implemented, would ensure that all citizens of our State, male or female, young or old, rich or poor, would someday work in a state where sexually harassing conduct is no longer tolerated under the law. I came to this view based on cases like *Continental Can Co., Inc. v. State*, 297 N.W.2d 241 (Minn.1980), and the legislative acts that followed that case. I was also much encouraged by the attitudinal changes I saw in the workplace. Yet, more than two decades later as my service as an appellate judge draws to a close, I am concerned that the opinion the majority renders today signifies a step backwards on what I once believed was a one-way path toward ending sexual harassment in the workplace.

For all of the foregoing reasons, I respectfully concur in part and dissent in part.

PAGE, Justice (concurring in part and dissenting in part).

I join in the concurrence and dissent of Justice Paul H. Anderson.

4. Reviewing courts have at times stated that a district court's finding of fact is clearly erroneous when it "strike[s] [the reviewing court] as wrong with the force of a five-week-old, unrefrigerated dead fish." *In re Papio Keno Club, Inc.*, 262 F.3d 725, 729 (8th Cir.2001) (citation omitted) (internal quotation marks omitted). Although this colorful language does not articulate a legal standard, I believe that the district court's finding that Zapolski's behavior with respect to the female employees at Two Harbors Fish was not sufficiently severe or pervasive so as to create an objectively and subjectively hostile work environment carries with it more than a sufficient stench to render it clearly erroneous.