*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2064**

Guava LLC, et al.,
Appellants,

Michael Dugas,
Appellant,

vs.

Spencer Merkel,
Defendant,

Qwest Communications Corporation, et al.,
Respondents,

John Doe 173.23.48.174, et al.,
Respondents,

John Doe 24.111.103.45, et al.,
Respondents,

John Doe 173.19.225.244, et al.,
Respondents,

John Doe, et al.,
Respondents.

**Filed August 4, 2014
Affirmed as modified
Toussaint, Judge***

Hennepin County District Court
File No. 27-CV-12-20976

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

Paul Robert Hansmeier, Class Justice PLLC, Minneapolis, Minnesota (for appellants Alpha Law Firm LLC and Guava LLC)

Michall Dugas, Class Justice PLLC, Minneapolis, Minnesota (pro se)

David Earle Camarotto, Bassford Remele, P.A., Minneapolis, Minnesota (for respondents Qwest Communications Corporation, et al.)

Mark Christopher Santi, Thompson Hall Santi Cerny & Dooley, Minneapolis, Minnesota (for respondents John Does 173.23.48.174, et al.)

Paul Allen Godfread, Godfread Law Firm, P.C., Minneapolis, Minnesota (for respondents John Doe 24.111.103.45, et al.)

John Thomas Sullivan, Edward Peter Sheu, Best & Flanagan, LLP, Minneapolis, Minnesota (for respondents John Doe 173.19.225.244)

Phillip Gainsley, Phillip Gainsley Law Office, Minneapolis, Minnesota (for respondent John Doe, et al.)

Considered and decided by Schellhas, Presiding Judge; Halbrooks, Judge; and Toussaint, Judge.

## UNPUBLISHED OPINION

**TOUSSAINT**, Judge

This appeal is taken from a district court order imposing attorney-fee sanctions against appellants for the bad-faith pursuit of litigation. Because the district court did not abuse its discretion, we affirm.

## FACTS

As the district court observed, "[t]his case has a relatively short but peculiar history. This Court was presented with virtually no factual evidence during the pendency of this 'litigation.'" Much of the evidence that was presented to the district court related

2

to decisions from courts in other jurisdictions finding misconduct, similar to that alleged here, by the same parties or by apparently related entities. It is clear from these decisions that appellants are believed to be engaged in a sophisticated scheme to improperly use the judicial process to obtain the identities of Internet subscribers from Internet service providers (ISPs), and to use that information to pursue settlements of alleged copyright and/or hacking claims with those Internet subscribers. *See, e.g., AF Holdings, LLC v. Does 1-1058*, __ F.3d __, 2014 WL 2178839, at *2 (D.C. Cir. May 27, 2014) (describing "modus operandi" of Prenda Law); *Ingenuity 13 LLC v. John Doe*, 2013 WL 1898633, at *2-3 (C.D. Calif. May 6, 2013) (setting forth findings on scheme by attorneys John Steele, Paul Hansmeier, Paul Duffy and Prenda Law).[1] Like the district court, however, although we may take judicial notice of the decisions from other jurisdictions, Minn. R. Evid. 201(b), we base our decision on the record developed before the district court in these proceedings, viewed in the light most favorable to the district court's findings. *See Rasmussen v. Two Harbors Fish Co.*, 832 N.W.2d 790, 797 (Minn. 2013) (holding that appellate courts examine evidence in light most favorable to district court's findings).

---

[1] The types of claims asserted by appellants and their law firms have changed over time. Both *AF Holdings* and *Ingenuity 13* involved copyright claims asserted directly against John Does, and attempts to use third-party subpoenas to discover the identities of the John Doe defendants. *AF Holdings*, 2014 WL 2178839, at *2 (describing suit against 1,058 John Does); *Ingenuity 13*, 2013 WL 1898633, at *2-3 (describing multiple suits filed in federal district court). In this case, as is further described below, appellants initiated a computer-hacking claim against a single, passive defendant, and sought discovery of the identities of Internet subscribers alleged to have conspired with the defendant. What this case has in common with the previously asserted actions, again as we discuss further herein, are attempts to misuse subpoena power.

3

*The parties*

In the complaint that initiated this litigation, plaintiff-appellant Guava LLC is described as "a limited liability company that owns and operates protected computer systems . . . accessible throughout Minnesota." It is unclear, however, whether Guava even exists. Despite repeated inquiries by the district court, the record includes no evidence regarding Guava's incorporation, the identity of its principals, or the nature of its business operations. John Steele, one of several attorneys who appeared on behalf of Guava in the district court proceedings, stated during a hearing that Guava has "an office in Las Vegas. They're also based out of I believe they're in Nevis [in the Caribbean]." At another hearing, in response to questioning regarding Guava's existence, appellant Michael K. Dugas conceded that he had provided no documentary or affidavit evidence of the company's existence, asserting merely that "there's several principals that I met from Guava LLC so I am, you know, very aware that they're an actual company." No corporate representative of Guava ever appeared before the district court.

Appellant Alpha Law Firm LLC was a Minnesota limited liability company registered on January 22, 2010, by Paul Hansmeier, an attorney licensed to practice in Minnesota. Hansmeier filed a notice of dissolution for the firm on August 30, 2013. Appellant Dugas is also an attorney licensed to practice in Minnesota.

Dugas, Hansmeier, Steele, Alpha, and Prenda Law Inc. represented Guava in proceedings before the district court. Although most of the pleadings included a signature block identifying Dugas and Alpha as counsel for Guava, Hansmeier filed a notice of appearance in the district court identifying himself as "of counsel" at Prenda

4

Law and Steele, an Illinois attorney, sought pro hac vice admission in the district court. On appeal, Guava and Alpha are represented by Hansmeier and Class Justice PLLC, a limited liability company registered with the Minnesota Secretary of State by Hansmeier on July 3, 2013.

Spencer Merkel is a resident of Beaverton, Oregon and the defendant in the lawsuit initiated by Guava. Merkel was represented by Minnesota attorney Trina Morrison, who went to law school with Dugas.

Respondents are ISPs and John Does, and their counsel, who objected to third-party subpoenas served by appellants in this action and who sought and obtained sanctions from the district court.

### *Factual Background*

In September 2012, Merkel received a letter from Prenda Law Inc., alleging that he had violated copyright laws by downloading an adult film from the Internet. The letter advised Merkel that the owner of the copyright, Hard Drives Productions, Inc., would bring suit against Merkel unless he paid $3,400 in settlement of the claims. Unable to pay, Merkel called the number provided in the letter, and spoke to someone who identified himself as "Michael" or "Mike," who offered Merkel an alternative settlement arrangement. Under that arrangement, Merkel would agree to be sued, Prenda would ask for, and Merkel would provide, a copy of his bit-torrent log, and Prenda would dismiss the case against Merkel. In discussing the settlement, "Michael" stated that he did not know any attorneys in Oregon, but that he knew an attorney in Minnesota who would represent Merkel pro bono. Merkel thus agreed to be sued in Minnesota, and he retained

5

Morrison based on information provided to him by "Michael" at Prenda Law. Merkel had never heard of Guava or Alpha before this suit was initiated, and he believed he would be sued by Hard Drives in Minnesota and that Prenda Law would be opposing counsel.

### *Procedural History*

Guava served the complaint in this action on Merkel on October 15, 2012, and filed it in Hennepin County District Court two days later. The complaint alleged two counts: the first for interception of electronic communications in violation of Minn. Stat. § 626A.02 (2012) and the second for civil conspiracy to violate the same statute. The complaint contains little detail about the supposed violations, alleging generally that Merkel "used a username and password that did not belong to him to gain unauthorized access to [Guava's] protected computer systems" and "intercepted electronic communications between [Guava] and its paying members," and that Merkel "obtained the username and password . . . from a website that allows its members to trade stolen usernames and passwords amongst one another."

On October 25, 2012, one week after filing the complaint, Guava filed an "unopposed discovery motion for authorizing order," seeking the district court's approval of subpoenas directed to more than 300 ISPs, ostensibly to discover Merkel's alleged co-conspirators' names, addresses, telephone numbers, e-mail addresses, and media access control addresses. The district court held a hearing on October 31, 2012; neither Merkel nor his counsel appeared. The district court denied the motion, concluding that Guava

had "not demonstrated that the personally identifying information possessed by over 300 Internet Service Providers . . . is relevant and material to this matter."

On November 6, 2012, Guava filed an "emergency renewed unopposed discovery motion for authorizing order," this time seeking approval for subpoenas directed to 17 ISPs. Guava asserted in its motion that "these specific ISPs unquestionably possess information connected to the issues in this litigation," but provided no evidentiary support for that assertion. The district court held a hearing on November 7, 2012, and issued an order that day granting Guava's motion, but allowing the targeted ISPs a period of 30 days to file motions to quash. A number of ISPs and individual Internet subscribers, referenced as John Does, moved to quash the subpoenas, and a hearing was scheduled for January 25, 2013.

At the January 25 hearing, counsel for the ISPs and John Does asserted that the litigation was being pursued for the improper purpose of using third-party discovery to obtain names of Internet subscribers from whom settlements could be extorted. In support of this assertion, counsel submitted an affidavit from Merkel regarding his interactions with Prenda Law in the months leading up to the initiation of this suit. The district court also heard testimony from attorney Morrison that Merkel was referred to her by Dugas and Hansmeier; that she expected a suit from Hard Drives; and that "[t]here's been some bait and switch you might call it in this case." Counsel opposing the subpoenas further asserted that the improper purpose of the litigation was evidenced by Guava's failure to seek any discovery from Merkel himself. Guava, through attorneys Steele and Hansmeier, denied any connection between Hard Drives and this action,

7

conceded that they had not yet sought any discovery from Merkel, and asserted that the third-party discovery was an important first step to their discovery efforts.

Counsel for the ISPs and John Does also raised concerns about Guava's failure to file a certificate of authority, a prerequisite for foreign entities doing business in Minnesota before bringing suit. *See* Minn. Stat. § 322B.694 (2012). Attorneys Steele and Hansmeier conceded that no certificate had been filed, but asserted that the statute did not apply because Guava was not doing business in Minnesota. When pressed by the district court for a basis for Minnesota courts exercising jurisdiction, Steele asserted that, despite Guava's and Merkel's lack of connections to Minnesota, personal jurisdiction was proper because the parties consented to it. He also somewhat cryptically asserted that the case had a Minnesota connection because "the location and progress verifying activities were trying to show that much of the activity, of certain amounts of the activity, was occurring in Minnesota[,] so it's the acts themselves that are occurring in Minnesota." The district court was not persuaded by Steele and Hansmeier's arguments, and at the end of the January 25 hearing the district court indicated that it would take the matter under advisement but was inclined to dismiss the entire action based on Guava's failure to file a certificate of authority under Minn. Stat. § 322B.694.

On March 1, 2013, before the district court issued a ruling on the motions to quash, Guava and Merkel filed a stipulation for dismissal with prejudice. The same day, counsel for one group of the John Does filed a motion and affidavit seeking to recover attorney fees and requesting that the district court issue an order to show cause why Guava and its counsel should not be required to pay the fees incurred by all of the ISPs

and John Does in defending against the subpoenas. The district court ordered dismissal, and judgment was entered on March 5, 2013.

On March 6, 2013, the district court issued an order to show cause (OSC), based on the John Does' motion for fees, "and all the files, records, and proceedings herein, including the arguments, affidavit and testimony received at the January 25, 2013 hearing in this matter." The OSC required that Guava, Dugas, and Alpha "PERSONALLY APPEAR AND SHOW CAUSE" at a hearing on April 23, 2013 "why the Court should not order [them] to pay the reasonable attorney fees and costs incurred by the non-parties to this action." The OSC allowed the John Does to file fee petitions and appellants to file responses. On March 8, 2013, the district court issued an amended OSC that also allowed the ISPs to file fee petitions. The OSC was not addressed to Steele, Hansmeier, or Prenda Law.

Attorney Dugas appeared at the April 23 hearing, without any corporate representative attending for Guava. Dugas stated: "My understanding[,] and I guess it was incorrect, is that as an agent as an attorney for [Guava] that I could represent them in this matter as certainly I've done throughout of the entirety of the case." The district court pressed Dugas for a reason why no evidence had been presented regarding Guava's structure or its business:

> [W]hy don't I have anything from them? I mean why don't I have any documents since you know that they're alleging it's fraudulent? If I agree that it's fraudulent then I could, I would have a basis to Order you to pay attorney's fees so because I'm saying it looks like you're doing this fraud on the Court. So if you want to show me that you're not doing a fraud on the Court, then why wouldn't you say Your Honor,

9

> this is wholly unjust, how dare they say these things? Look here's my affidavit from the President and CEO of Guava LLC. This is the nature of the business that we do. This is how we found out about what Mr. Merkel was doing. Why don't I have anything like that? . . . . Why don't I have an affidavit from someone from Guava LLC other than you?

In responding to the district court's concerns about fraud, Dugas asserted for the first time at the OSC hearing that the action was filed in Minnesota because it was convenient to Hansmeier and Dugas as counsel. Dugas also conceded that Guava still had not filed a certificate of authority pursuant to Minn. Stat. § 322B.94, but argued that Guava was not doing business in Minnesota and thus the statute did not apply. Dugas also conceded that no discovery had been sought from Merkel, but again asserted that the third-party discovery was of primary importance. Dugas also denied any connection between the communications that Merkel had with "Mike" or "Michael" at Prenda Law and this action, asserting, "I made no offer, I made no deal."

On August 7, 2013, the district court issued an order granting in part the nonparties' motions for attorney fees and costs. The court ordered appellants Guava, Dugas, and Alpha jointly and severally liable to pay within 30 days a total of $63,367.52 in attorney fees and costs to one attorney and four law firms representing the ISPs and John Does. The district court also enjoined appellants from filing "any future civil action against the John Does or the ISPs without first posting a bond with the Court in the amount of $10,000 or such other amount as the Court deems appropriate, and without first obtaining a certificate of authority from the Minnesota Secretary of State."

10

On August 30, 2013, the district court issued a memorandum in support of its order. In the memorandum, the district court recited the procedural and factual history of the case, including the initial letter from Prenda Law to Merkel regarding alleged violations of Hard Drive's copyrights and Merkel's discussions with "Michael" at Prenda Law about the alternative settlement arrangement that required Merkel to consent to suit in Minnesota. The district court expressly rejected as not credible attorney Dugas's assertions that those discussions did not take place and this action is unrelated to the Hard Drives demand letter: "This Court finds that Dugas lacks any credibility . . . based upon the actions he has taken in this matter. Therefore, any declaration and testimony offered is discredited with this Court."

The district court's memorandum also reviewed the applicable law, including Minn. Stat. §§ 322B.94, which requires certificates of authority from foreign corporations doing business in Minnesota, 549.18, which requires foreign corporations to file a bond before initiating suit in Minnesota, and 549.211 (2012), which requires certification that litigation is not pursued for any improper purpose, as well as Minn. R. Civ. P. 45.03(a), which mandates that "[a] party or attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena." The district court cited Minnesota caselaw addressing the inherent authority of the courts to issue sanctions, particularly *Peterson v. 2004 Ford Crown Victoria*, 792 N.W.2d 454, 462 (Minn. App. 2010).

The district court found that:

> Plaintiff Guava LLC and its counsel Michael K. Dugas of Alpha Law Firm LLC acted in bad faith and without a basis in law and fact to initiate this action in Minnesota State District Court. This Court finds that an award of attorneys' fees is an appropriate and just sanction pursuant to the Court's inherent authority.

In support of its bad-faith finding, the district court cited Guava's initiation of this action in Minnesota without any apparent connection to this state, and the related failure to file a certificate of authority before filing suit. The district court reasoned that, if a certificate of authority was required, that "alone illustrates bad faith on the part of [Guava] because it commenced this action without the Certificate of Authority and when the matter was brought to [Guava's] attention, nothing was done to obtain the Certificate of Authority." The court further reasoned that, if a certificate was not required because Guava was not doing business in Minnesota, "jurisdiction of this Court is . . . undermined and the vexatious and oppressive nature of this action become clearer because any connection to the State of Minnesota between these two parties is eliminated." The district court also based the finding of bad faith on the course of the litigation, including a "fishing expedition for IP addresses of the alleged conspirators without regard to their relation to Merkel." The district court noted counsel's concession that no discovery was sought from Merkel and reasoned, "If there was a true civil conspiracy at play in this action, the Court cannot imagine a scenario where discovery of what Merkel knew regarding his alleged co-conspirators would not be vital information." The district court concluded:

> With no good faith pursuit against Merkel in this case, the Court is left only with [Guava's] attempts to harass and

> burden Non-Parties through obtaining IP addresses to pursue possible settlement rather than proceed with potentially embarrassing litigation regarding downloading pornographic movies. Therefore, the Court is using its inherent authority to issue the sanctions . . . .

Appellants failed to pay the sanctions within 30 days of the August 7, 2013 order, and the district ordered the entry of judgments. This appeal was taken from the judgments entered against Alpha Law Firm, Guava, and Dugas on September 23, 2013.

## D E C I S I O N

The district courts have authority to impose sanctions as necessary to protect their "vital function—the disposition of individual cases to deliver remedies for wrongs and justice freely and without purchase; completely and without denial; promptly and without delay, conformable to the laws." *Patton v. Newmar Corp.*, 538 N.W.2d 116, 118 (Minn. 1995) (quotation omitted). "This includes awarding attorney fees." *Peterson*, 792 N.W.2d at 462. But such awards are available only when a party acts in "bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46, 111 S. Ct. 2123, 2133 (1991) (quotation omitted); *see also Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767, 100 S. Ct. 2455, 2465 (1979); *Harlan v. Lewis*, 982 F.2d 1255, 1260 (8th Cir. 1993) (characterizing *Chambers* and *Roadway* as setting a bad faith standard for attorney-fees awards, although not for all exercises of inherent power); *Patton*, 538 N.W.2d at 119 (relying on federal caselaw addressing sanctions imposed under inherent authority).

"The task of determining what, if any, sanction is to be imposed is implicated by the broad authority provided the [district] court." *Patton*, 538 N.W.2d at 118.

Accordingly, we review the district court's decision to impose sanctions under an abuse-of-discretion standard. *See Frazier v. Burlington N. Santa Fe Corp.*, 788 N.W.2d 770, 782 (Minn. App. 2010) (applying abuse-of-discretion standard to attorney-fee sanctions imposed under inherent authority), *rev'd on other grounds*, 811 N.W.2d 618 (Minn. 2012). The burden is on appellant to show both error and prejudice resulting from the error. *Midway Ctr. Assocs. v. Midway Ctr., Inc.*, 306 Minn. 352, 356, 237 N.W.2d 76, 78 (1975). "Error cannot be presumed." *Noltimier v. Noltimier*, 280 Minn. 28, 29, 157 N.W.2d 530, 531 (1968).

We have carefully reviewed the record, and we conclude that the district court did not abuse its discretion in imposing attorney-fee sanctions against appellants. The district court found that appellants initiated and pursued this litigation in bad faith, that the only purpose of the litigation was "to harass and burden Non-Parties through obtaining IP addresses to pursue possible settlement rather than proceed with potentially embarrassing litigation regarding downloading pornographic movies." This is an improper use of the judicial system. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 n. 17, 98 S. Ct. 2380, 2390 n.17 (1978) (upholding denial of discovery request when the purpose of the request was "to gather information for use in proceedings other than the pending suit"); *see also AF Holdings,* 2014 WL 2178839, at *6-7 (vacating order upholding subpoenas of ISPs because plaintiff had no good-faith basis for believing that all affected Internet subscribers could be joined as defendants and thus information about those subscribers "could not possibly be relevant to the subject matter involved in the action") (citing Fed. R. Civ. P. 26(b)(1)); *Mick Haig Prods. E.K. v. Does 1-670,* 687 F.3d 649,

652 (5th Cir. 2012) (affirming sanctions award based on plaintiff's attempt to use a "strategy of suing anonymous internet users for allegedly downloading pornography illegally, using the powers of the court to find their identity, then shaming or intimidating them into settling for thousands of dollars"); *Raw Films, Ltd. v. Does 1-32,* 2011 WL 6182025 (E.D. Va. Oct. 5, 2011) (holding that using subpoena powers as "inexpensive means to gain the Doe defendants' personal information and coerce payment from them," with "no interest in actually litigating the cases," indicates "improper purpose for suits").

Appellants articulate four arguments for reversing the sanctions award. We address, and reject, each in turn.

## 1. Due Process

Appellants first assert that the sanctions award must be reversed because the OSC proceedings violated their rights to procedural due process. We disagree. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 902 (1976) (quotation omitted). Appellants claim violations of their due-process rights by virtue of (a) improper ex parte communications between respondents' counsel and the district court; (b) insufficient notice of the conduct to be sanctioned; and (c) imposition of sanctions against Alpha when the OSC was directed only to Guava and Dugas.

### a. Ex Parte Contacts

The Minnesota Code of Judicial Conduct generally prohibits ex parte communication, but permits, "when circumstances require it, ex parte communication for

15

scheduling, administrative, or emergency purposes, which [do] not address substantive matters" if "the judge reasonably believes that no party will gain a procedural, substantive, or tactical advantage as a result of the ex parte communication" and "makes provision promptly to notify all other parties of the substance of the ex parte communication and allows an opportunity to respond." Minn. Code Jud. Conduct Rule 2.9 (2014). In support of their argument that the district court engaged in improper ex parte communications, appellants cite to time records reflecting (1) a paralegal visit to the courthouse to obtain the district court's signature on the OSC and (2) an attorney's telephone conversation with the district court's clerk, requesting an amendment to the OSC. Although the better practice with respect to these requests may have been for counsel to submit letters to the district court, copying all counsel, there is no indication of any improper ex parte communication in connection with the requests. Moreover, appellants identify no prejudice resulting from the communications. Appellants were given the opportunity to be heard on the OSC, both in writing and through oral argument, before the district court issued the order imposing sanctions. Accordingly, we reject appellants' arguments for reversal based on alleged improper ex parte communications. *See Koes v. Advanced Design, Inc.*, 636 N.W.2d 352, 363 (Minn. App. 2001) (rejecting argument for reversal based on ex parte communications because there was no evidence of any substantive communications and no evidence of prejudice resulting from ex parte communications), *review denied* (Minn. Feb. 19, 2002).

### b.    Sufficiency of Notice

"A party or attorney must have fair notice of both the possibility of a sanction and the reason for its proposed imposition." *Rumachik v. Rumachik*, 494 N.W.2d 68, 71 (Minn. App. 1992), *review denied* (Minn. Feb. 25, 1993).  Appellants argue that the OSC failed to put them on notice of the conduct for which sanctions were sought.  But the OSC incorporated one group of the John Does' memorandum in support of its motion for attorney fees, which asserted that "Guava and its counsel filed this action for improper purposes, namely, to uncover the names and addresses of non-parties . . . to extort money from those non-parties." This is precisely the conduct for which the district court imposed sanctions.  The OSC also referred to the January 25 hearing, at which many of bases for the bad-faith finding were raised.  We conclude that, by the time of the OSC hearing, appellants were well aware of the district court's concerns.  Accordingly, we reject appellants' arguments for reversal based on insufficient notice.

### c.    Notice to Alpha

Appellants assert that the sanctions against Alpha must be reversed because Alpha was not identified in the OSC.  We disagree.  The district court ordered "that you, Plaintiff Guava, LLC and its counsel of record Michael K. Dugas, Esq., Alpha Law Firm LLC, 900 IDS Center, 80 South 8th Street, Minneapolis, MN 55402 PERSONALLY APPEAR AND SHOW CAUSE. . . ."  The language of the order might have been more clear had the court included the word "and" between Dugas and Alpha.  Nevertheless, Alpha is identified in the OSC and was put on notice that sanctions could be awarded against it.  Further, Alpha was notified through the multiple fee petitions filed by the ISPs

17

and John Does, all of whom sought to recover fees from Guava and its counsel of record. As we note above, counsel of record included Dugas, Hansmeier, Steele, and Alpha. The district court denied requests for sanctions against Hansmeier, Steele and Prenda Law who were not identified in the OSC. It follows that the district court imposed sanctions against Alpha because it was identified in the OSC. Accordingly, we reject appellants' arguments for reversal of the sanctions award against Alpha.

## 2.    *Sufficiency of the Evidence*

Appellants next assert that the sanctions award must be reversed because there is insufficient evidence to support the district court's finding of bad faith. Again, we disagree. "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Minn. R. Civ. P. 52.01. A finding is "clearly erroneous" if the reviewing court is "left with the definite and firm conviction that a mistake has been made." *Rasmussen*, 832 N.W.2d at 797 (quotation omitted). "And when determining whether a finding of fact is clearly erroneous, we view the evidence in the light most favorable to the verdict." *Id.* In doing so here, we are mindful that "circumstantial evidence is entitled to as much weight as any other evidence." *Rogers v. Moore*, 603 N.W.2d 650, 657 (Minn. 1999).

After considering all of the circumstances, the district court found that appellants had pursued this litigation in bad faith. Although the record in this case was not fully developed because appellants voluntarily dismissed the underlying action before it could be considered on the merits, it includes sufficient evidence to support the district court's

18

finding. The evidence includes Merkel's affidavit testimony that he received a letter from Prenda Law threatening suit on behalf of its client, Hard Drives; he made arrangements with someone named "Michael" or "Mike" at Prenda Law for an alternative settlement arrangement, including his consent to be sued in Minnesota; Prenda Law referred him to pro bono counsel; Hard Drives would dismiss the suit after Merkel provided his BitTorrent log; and he was surprised to be sued by Guava, rather than Hard Drives. The evidence also includes Morrison's testimony that Merkel was referred to her by Hansmeier and Dugas; that she expected a lawsuit to be filed by Hard Drives, rather than Guava; and "[t]here's been some bait and switch you might call it in this case." And the evidence includes the facts that (a) despite repeated questioning by the district court regarding Guava's corporate status, appellants failed to file a certificate of authority or provide any evidence regarding Guava's incorporation, its officers, or its business operations, and (b) despite Merkel's alleged involvement in a hacking conspiracy, appellants sought no discovery from Merkel during the pendency of the litigation. This evidence, taken together, amply supports the finding that appellants had no good-faith basis for this litigation. *See, e.g., Westling v. Holm*, 239 Minn. 191, 193, 58 N.W.2d 252, 253 (1953) (explaining that circumstantial evidence must "furnish a reasonable basis for an inference" and that a finding based on circumstantial evidence "cannot be set aside merely because another inference might have been drawn from the same facts").

Appellants assert that the district court erred by relying on the communications between Merkel and Prenda Law relating to claims by Hard Drives, arguing that there is no evidence of a connection to this action. But the district court found a connection, and

19

there is evidence in the record to support that finding. "Michael" at Prenda Law offered to refer Merkel to Minnesota attorney, Morrison. Morrison testified that she received the referral from Hansmeier and Dugas; Hansmeier filed a notice of appearance identifying himself as "of counsel" to Prenda Law, and Dugas submitted a declaration in this matter identifying himself as the only "'Mike or Michael'" at either Alpha Law Firm LLC or Prenda Law, Inc." Dugas denied representing Hard Drives or being involved in the settlement agreement between Merkel and Hard Drives. But the district court rejected this assertion as incredible, and we will not disturb that credibility determination.

Appellants address and attempt to rationalize each of the additional circumstances relied upon by the district court. For instance, they assert that the certificate of authority required under Minn. Stat. § 322B.694 is not jurisdictional, but rather provides an affirmative defense, and that Guava was not required to file a certificate because it was not doing business in Minnesota. They further assert that the district court could exercise jurisdiction over a case involving only nonresident parties, and that they were not required to seek discovery from Merkel before third-party discovery. We need not address the merits of these legal assertions because they miss the point of the district court's bad-faith analysis. The district court found, based on the totality of the circumstances—including Prenda Law's communications with Merkel, Guava's failure to seek any discovery from Merkel, and Guava's failure to file a certificate of authority or otherwise substantiate its corporate existence—that appellants had no good-faith basis for bringing this action. And we have concluded that the finding is not clearly erroneous.

20

Appellants further assert that the evidence cannot sustain a bad-faith finding because the district court stated, in its order conditionally allowing appellants to subpoena 17 ISPs, that Guava had demonstrated "that the personally identifying information possessed by the [ISPs] is relevant and material in this matter and there is good cause for the discovery of this information." Appellants contend that the district court's order "further strengthened Guava's good faith belief in the propriety of its discovery." Appellants essentially argue that, regardless of whether it was true, they (initially) succeeded in convincing the district court that they were acting in good faith, and they should be able to rely on the district court's statements to prove their actual good faith. We reject this argument as circular and unpersuasive. The district court's initial determination that Guava demonstrated that the information it sought was relevant and material did not preclude it from later—on being made more fully informed of the facts—finding that appellants were acting in bad faith.

Finally, appellants assert that the sanctions against Dugas and Alpha must be reversed because the district court made no specific findings of bad faith by them. We disagree. The district court's order details Dugas's and Alpha's involvement as counsel for Guava, and the district court specifically found that "Plaintiff Guava LLC and its counsel Michael K. Dugas of Alpha Law Firm acted in bad faith and without a basis in law or fact to initiate this action in Minnesota State District Court." Moreover, because attorney Hansmeier, the sole manager of Alpha, participated in proceedings before the district court, the authority relied upon by appellants is inapposite. *Cf. Browning Debenture Holders' Comm. v. DASA Corp.*, 560 F.2d 1078, 1089 (2d Cir. 1977)

(reversing sanctions where sanctioned parties were not "personally . . . aware of or otherwise responsible for the procedural action instituted in bad faith"); *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114-15 (2d Cir. 2009) (reversing sanctions imposed against large law firm when there was no evidence that firm acted in bad faith).

### 3.      *Amount of Sanctions*

Appellants assert that the district court awarded excessive sanctions, challenging certain attorney-fee awards as unsupported and arguing that the district court erred by granting injunctive relief and by failing to consider Dugas's ability to pay the sanctions. With one exception, we disagree.  The district court did not abuse its discretion by allowing fees for respondents' ex parte contacts with the district court (which we have determined were not improper), for time spent researching related matters, or for time reflected in an affidavit in a format other than that specified in Minn. R. Gen. Pract. 119.02.  *See Mears Park Holding Corp. v. Morse/Diesel, Inc*., 426 N.W.2d 214, 219-20 (Minn. App. 1988) ("As long as the record reflects a reasonable correlation between the final amount of the sanctions imposed, the expenses incurred by the party defending the unfounded claims, and the basis of the court's imposition of sanctions, there will be no abuse of discretion by the trial court."); Minn. R. Gen. Pract. 1.02 (providing district court with discretion to "modify the application of these rules in any case to prevent manifest injustice").  Nor was the district court required to limit the sanctions imposed against Dugas based on his alleged inability to pay.  *See Uselman v. Uselman*, 464 N.W.2d 130, 145 (Minn. 1990) ("If the court chooses to impose a monetary sanction, it *might* consider the attorney's or party's ability to pay." (emphasis added)).  Furthermore,

given the egregiousness of the conduct found by the district court, and the breadth of the district court's inherent authority, we observe no error in the district court's requiring appellants to submit a $10,000 bond before filing any future litigation. We are unable to discern, however, a basis in the record for the district court's requirement that Guava, Dugas, or Alpha file a certificate of authority under Minn. Stat. § 322B.94. The statutory requirement does not apply to Dugas or Alpha, neither of which is a foreign corporation, and, because there has been no factual determination that Guava does business in Minnesota, it is not clear whether the statute applies to it. *See* Minn. Stat. § 322B.91 (2012) (requiring foreign limited liability company "transacting business in this state" to obtain certificate of authority). Accordingly, we will modify the district court's injunctive relief to omit the requirement that a certificate of authority be filed before commencing suit.[2]

### 4. *Authority for Post Dismissal Sanctions*

Lastly, appellants assert that the district court was precluded from awarding sanctions after the action had been voluntarily dismissed, citing such a limitation in the district court's authority under Minn. R. Civ. P. 11.03 and Minn. Stat. § 549.211 (2012). *See, e.g., Gibson v. Coldwell Banker Burnet*, 659 N.W.2d 782, 790 (Minn. App. 2003) (explaining that, under Minn. R. Civ. P. 11.03 "motions for sanctions brought after the conclusion of the trial must be rejected precisely because the offending party is unable to withdraw the improper papers or otherwise rectify the situation"). But the district court's

---

[2] This modification should not be construed to preclude a district court from determining on appropriate facts in a future suit that Guava is required to file a certificate of authority.

23

inherent authority to impose sanctions is not so circumscribed. *See, e.g., Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 389 n.2 (4th Cir. 2004) explaining that "failure to comply with the safe-harbor provisions would have no effect on the court's authority to . . . impose sanctions within its inherent power").

**Affirmed as modified.**